STATE OF HAWAII, Plaintiff-Appellee, *v.* STEVEN
BARNES, Defendant-Appellant

NO. 5878

SEPTEMBER 13, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

The defendant was convicted on two counts charging him with promoting a detrimental drug in the first degree, contrary to HRS § 712-1247(1) (f). The defendant appeals from the judgment and sentence of the circuit court.

We affirm the defendant's conviction on the first count of the indictment, charging him with having distributed a detrimental drug, contrary to statute, on November 8, 1974. We, however, reverse his conviction on the second count of the indictment.

In support of the latter charge, there was admitted into evidence, over the defendant's objection, a bag of marijuana recovered by the arresting officer from the defendant's automobile. The trial court had earlier denied the defendant's motion to suppress, which in its discretion it had chosen to entertain during the course of trial. It held that the recovery of the contraband was the product of a search and seizure incident to a lawful arrest. We find that the trial court erred.

This was not a search and seizure incident to a lawful arrest. The arrest in this case was effected by the police without a warrant, and an arrest without a warrant will be upheld only where there was probable cause for the arrest. Probable cause exists when the facts and circumstances known to the officer, or of which he had reasonably trustworthy information, would warrant a man of reasonable caution to believe that the person arrested has committed or is committing an offense. *Carroll v. United States,* 267 U.S. 132 (1925); *United States v. Loo,* 478 F.2d 401 (9th Cir. 1973); *State v. Gustafson,* 55 Haw. 65, 515 P.2d 1256 (1973); *State v. Chong,* 52 Haw. 226, 473 P.2d 567 (1970).

Measured against an objective standard and not by the subjective good faith of the arresting officer, *State v. Delmondo,* 54 Haw. 552, 512 P.2d 551 (1973), the facts known to the arresting officer and the information he possessed were clearly insufficient to support the warrantless arrest. Officer Baisa was a member of a police unit engaged in the apprehension of certain drug distributors in the County of Maui. The defendant was one of these suspected dealers. A police undercover agent had entered into an arrangement with the defendant for the delivery of marijuana to the undercover agent, for a specified consideration. Officer Baisa was assigned by his superior officer to keep the defendant under surveillance while the defendant presumably went to his supplier for the drug. The officer, however, was unable to follow the defendant to the actual place of rendezvous with his supplier. Accordingly, Officer Baisa was completely unaware of what transpired at that location or whether the defendant even met with the alleged supplier. Neither was he aware of whether the undercover agent had in fact paid the defendant the money for the marijuana pursuant to the earlier arrangements. Officer Baisa nevertheless effected the arrest as the defendant was driving back from the direction where he was supposed to have met with his supplier. The extent of the officer's knowledge of the facts pertinent to the issue of probable cause is best summed up by his testimony at trial:

A. Sergeant Tagomori told me during our briefing that Mr. Barnes — our undercover agent was to meet Mr.

Barnes, and give him the money, whereby Mr. Barnes was to go and pick up the marijuana and bring it back to our undercover agent. That's my knowledge.

Q.  So your knowledge was based solely on what Sgt. Tagomori had told you earlier in the evening before any of — any of these events occurred; is that right?

A.  That's right, sir.

Q.  And that was why you arrested Mr. Barnes; is that correct?

A.  That's right, sir.

It is not determinative on the issue of probable cause that the undercover agent might have actually paid the money to the defendant prior to the arrest. Officer Baisa was completely unaware that payment for the marijuana had been made, and the agent's knowledge of this vital information could not be imputed to the arresting officer. *State v. Mickelson,* 526 P.2d 583 (Or. App. 1974). Where police officers are acting in concert and are keeping each other informed of the progress of a particular investigation, the knowledge of each is deemed to be the knowledge of all. *State v. Pokini,* 45 Haw. 295, 367 P.2d 499 (1961); *United States v. Bianco,* 189 F.2d 716 (3rd Cir. 1951); *Williams v. United States,* 308 F.2d 326 (D.C. Cir. 1962); *United States v. Pitt,* 382 F.2d 322 (4th Cir. 1967); *State v. Mickelson, supra.* Personal knowledge on the part of the arresting officer of the facts and circumstances establishing probable cause would not, in those situations, be required to enable him to effect an arrest.[1] Officer Baisa, however, was not kept informed, and accordingly was without knowledge, at the time of the arrest, either that payment had been made or that events had transpired according to plan. His arrest of

---

[1] To require the arresting officer to have personal knowledge of all the facts in every case would seriously curtail the investigative teamwork and the concerted action that are vital components of modern law enforcement. Sufficient probable cause for the arrest would also exist where the police department transmits direct orders, based on information which would support an arrest without a warrant, to the arresting officer notwithstanding his lack of personal or first hand knowledge of all the facts. Williams v. United States, supra; State v. Pokini, supra. Such was not the case here. The arresting officer was unable to testify that such an order was given.

the defendant, therefore, was not based on probable cause and the arrest being improper, the subsequent search and seizure was likewise improper.

The State nevertheless argues that even if there was no probable cause for the arrest, still there was ample justification for the initial stop of the defendant. We agree, but only to the extent that the initial stop was proper. Shortly prior to stopping and arresting the defendant, Officer Baisa heard over the police radio that the alleged supplier, with whom the defendant presumably had been in contact minutes before, had attempted to elude two other officers sent to arrest him. Being privy to the original plan and having been made aware of this new development, it would have been poor police practice on the part of Officer Baisa to have failed to make at least a minimal attempt to determine whether, at the time, the defendant was engaged in the commission of an offense. Viewing the matter from the totality of the circumstances known to the officer, we find the stopping of the defendant to have been clearly within the parameters of permissible police conduct.

The Supreme Court has held that a police officer may "in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). In connection with this rule, we observed in *State v. Goudy*, 52 Haw. 497, 501, 479 P.2d 800, 803 (1971):

"[T]his is warranted by the general governmental interest in effective crime prevention and detection; and that, given a state of facts, which separately may appear innocent but which taken together would warrant investigation, it would be poor police work to fail to make further investigation. However, it cautions that such an intrusion upon personal liberty must be reasonable and be based on something more substantial than inarticulate hunches, and that reasonableness is to be judged by an objective standard, namely, whether the facts known by the officer would warrant a man of reasonable caution to believe that the action taken was appropriate.

To justify an investigative stop, short of an arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* at 21. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate. *State v. Joao,* 56 Haw. 216, 533 P.2d 270 (1975); *State v. Onishi,* 53 Haw. 593, 499 P.2d 657 (1972). With respect to the initial stop in this case, we think the test was met. *See State v. Goudy, supra.*

We hold, however, that whatever search or seizure was conducted subsequent to the stop was improper. *See State v. Joao, supra.* A search incident to a valid arrest may be directed towards a protective search for weapons, or towards the discovery of the fruits of the crime for which the accused has been arrested, as well as the instrumentalities used in its commission, or to deprive the arrestee of potential means of escape. *State v. Hanawahine,* 50 Haw. 461, 443 P.2d 149 (1968). The search may be conducted of his person or of the area within his immediate reach and control. *State v. Dias,* 52 Haw. 100, 470 P.2d 510 (1970). But even where a warrantless search is conducted as an incident to a valid arrest, the search must be no broader than is absolutely necessary to accomplish the purposes for which such searches are permitted. *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974). *Compare, United States v. Robinson,* 414 U.S. 218 (1973); *Gustafson v. Florida,* 414 U.S. 260 (1973).

A search conducted in connection with a temporary investigative stop is even more confined. Such a search is strictly limited to that which is minimally necessary for the discovery of weapons which might be used against the officer or others nearby. Accordingly, the search and seizure in a stop and frisk situation is justified only if from the specific conduct of the defendant, or from reliable information, or from the attendant circumstances, the officer may reasonably infer that the person stopped is armed and presently dangerous. *Terry v. Ohio, supra; Sibron v. New York,* 392 U.S.

40 (1968); *State v. Joao, supra; State v. Onishi, supra.*
Moreover, the initial search for weapons is generally limited
to a patting down of the detainee's outer clothing, *Terry v.
Ohio, supra; People v. Aviles,* 21 Cal.App.3d 230, 98
Cal.Rptr. 316 (1971), and if, following the pat-down, the
officer cannot point to specific and articulable facts which
reasonably support his belief that the accused was then
armed and dangerous, a more extensive intrusion is prohi-
bited. *United States v. Gonzalez,* 319 F.Supp. 563 (D.C. Conn.
1970).

Here, there was absolutely no justification for the seizure
and search of the brown paper bag following the initial stop.
There was nothing in the conduct of the defendant, or in the
nature and appearance of the brown paper bag, that could
have led the officer reasonably to believe that it contained a
weapon immediately and readily available for the defendant's
possible use and that its seizure was necessary for his safety.
The marijuana itself was not in plain view. *Compare, State v.
Goudy, supra.* The record shows that in no way could the
arresting officer have known of the marijuana in the brown
paper bag without first seizing it and examining its contents.
It is, of course, axiomatic that the subsequent discovery of
contraband cannot be applied to validate the prior illegal
arrest by the police officer. *Sibron v. New York, supra.*

Affirmed as to the first count of the indictment.[2] Reversed
as to the second count.

*Eric A. Seitz* for defendant-appellant.

*Joseph E. Cardoza,* Deputy County Attorney for
plaintiff-appellee.

---

[2] We find the remainder of the defendant's contentions to be without merit. On
the issue of constitutionality of the statute under which the defendant was charged,
we refer to our decisions in State v. Renfro, 56 Haw. 501, 542 P.2d 366 (1975); State
v. Baker, 56 Haw. 271, 235 P.2d 1394 (1975). On the question of alleged police
misconduct, the trial court correctly ruled that this did not constitute sufficient
grounds for dismissal of the indictment. Such conduct, if true, however, is not to be
condoned, and had the defendant been prejudiced in his defense by the conduct
complained of, our holding might well have been different.