141 P.3d 1039

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Alvin Kalaokoa PEREZ,
Defendant–Appellee.**

**No. 27548.**

Supreme Court of Hawai'i.

Aug. 28, 2006.

Jason M. Skier, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

James S. Tabe, Deputy Public Defender, on the briefs, for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff-appellant State of Hawai'i [hereinafter, the prosecution] appeals from the Circuit Court of the Third Circuit's September 30, 2005 order granting defendant-appellee Alvin Kalaokoa Perez's motion to suppress evidence of drugs and drug paraphernalia found in his coin purse after he was arrested for shoplifting, given a pat-down search, detained for two hours, and then had his coin purse searched pursuant to a search warrant issued based on a canine screening of his coin purse at the end of the two-hour detention.[1] On appeal, the prosecution contends that the circuit court erred when it concluded that the police did not have justification to detain Perez after the pat-down search; therefore the evidence recovered upon the search of Perez should not have been suppressed. Perez counters that the circuit court did not err in concluding that his detention after the pat-down search was unjustified, and thus the evidence was properly suppressed as the fruits of an unlawful seizure.

Based on the following, we affirm the circuit court's order of suppression.

## I. BACKGROUND

On July 16, 2004, the prosecution filed a complaint charging Perez with the offenses of promoting a dangerous drug in the third degree, Hawai'i Revised Statutes (HRS) § 712–1243(1) (1993),[2] and prohibited acts related to drug paraphernalia, HRS § 329–43.5(a) (1993).[3] On February 15, 2005, Perez

---

1. The Honorable Glenn S. Hara presided over this matter.

2. HRS § 712–1243(1), entitled "Promoting a dangerous drug in the third degree," provides: "A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

3. HRS § 329–43.5, entitled "Prohibited acts related to drug paraphernalia," provides in relevant part:
 (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a

filed a motion to suppress the evidence of drugs and drug paraphernalia found in his possession, arguing that it was the fruit of an unjustified seizure of his person and closed coin purse. At hearings on June 14 and August 16, 2005, Perez conceded that he had been validly arrested for shoplifting and that the police had probable cause to arrest him on the drug charges after a police dog scented drugs in his coin purse. He agreed with the circuit court, therefore, that the key issue was whether there was "any legal basis" for detaining him and the purse until the dog arrived.

On September 30, 2005, the circuit court, having concluded that there was not any such legal basis, entered an order granting Perez's motion. The order contained the following findings of fact (FOF) and conclusions of law (COL):

The Court makes the following Findings of Fact:

1. On July 14, 2004, at about noon, Hawai'i County Police Officers [Apollo] Kepoo and John Gandolf arrested [Perez] at the KTA store in Waimea, Hawai'i. [Perez] was arrested for shoplifting air-freshener, the glass container for which can be used to smoke crystal methamphetamine.

2. Officer Kepoo told [Perez] that bail for the shoplifting charge would be $50.00. The usual bail for shoplifting is $50.00, as testified to by Officer Gandolf. [Perez] had over $50.00 in cash on his person at the time of his arrest.

3. From the KTA store[, Perez] was transported to the Waimea police station, which was about five minutes away from the KTA store. At that station, [Perez] was allowed to use the toilet. While at the toilet, with his back to Officer Gandolf, a pinging noise was heard by Officer Gandolf. Officer Gandolf did not see anything inside the toilet, but was concerned about [Perez] having a possible weapon. Officer Gandolf did a pat-down search of [Perez's] person, and found a cloth or leather coin purse, as well as some loose money. The coin purse was zipped closed. Officer Gandolf, while

starting to unzip the coin purse, asked [Perez] if it was alright for Officer Gandolf to put the loose money into the coin purse. Officer Gandolf had the coin purse unzipped about half-way when [Perez] told him "no." Officer Gandolf rezipped the coin purse closed. He did not see what was inside the coin purse.

4. [Perez] was then placed back into a cell, and Officer Gandolf called a Detective Hodson about [Perez] at about 12:15 p.m. Detective Hodson told Officer Gandolf that [Perez] was a known drug dealer, and to hold [Perez] there until he arrived at the Waimea station. [Perez] was left in the cell, and all processing of him on the shoplifting charge ceased. The time for processing an individual on a shoplifting charge runs from one hour to two hours. It will take one hour if the computer system is working properly and if things are "smooth."

5. [Perez] remained in the jail cell while Detective Hodson and Detective Diego drove from Kona to the Waimea station. They arrived at the Waimea station about 1:55 p.m., and Detective Hodson performed a canine screening on [Perez's] coin purse at 2:10 p.m. The canine alerted on the coin purse. [Perez] was then arrested at 2:15 p.m. for possible drug offenses.

6. Based primarily upon the canine screening, a search warrant was obtained for [Perez's] coin purse. The search warrant was executed, and methamphetamine and drug paraphernalia, plastic packets, were recovered.

The Court makes the following Conclusions of Law:

1. Officer Gandolf had a reasonable suspicion of possible weapons to allow him to pat down [Perez] at the toilet.

2. After the pat-down of [Perez], there was no further justification for further detention of [Perez] except for the shoplifting charge.

3. After the pat-down of [Perez], he was not processed for the shoplifting charge and allowed to post bail.

controlled substance in violation of this chapter.

4. After the pat[-]down search, police had no reasonable suspicion other than the shoplifting. The ceasing of processing of [Perez] for shoplifting resulted in his being detained for reasons other than shoplifting, which did not amount to probable cause to arrest [Perez]. As [Perez] had been patted down previously, there was no reason to further detain him for a pat[-]down or frisk for the safety of the officers, and detaining [Perez] for the sole purpose of a canine screen was, under the circumstance, unreasonable and unlawful.

5. The canine screening of [Perez's] coin pouch was the result of [Perez's] illegal seizure, and therefore, the search warrant was based on facts illegally obtained.

6. The methamphetamine and drug paraphernalia, plastic packets, recovered were the "fruits" of the illegal seizure of [Perez] and his property, and violated [Perez's] right to be free from unreasonable searches, seizures, and invasions of privacy under Article I, Section 7 of the Hawaiʻi Constitution.

On October 12, 2005, the prosecution filed a timely notice of appeal in this court.

## II. STANDARD OF REVIEW

██ [T]he proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his or her own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

State v. Anderson, 84 Hawaiʻi 462, 467, 935 P.2d 1007, 1012 (1997) (internal citations, quotation marks, brackets, and emphases omitted). The appellate court reviews a "circuit court's ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'" State v. Kauhi, 86 Hawaiʻi 195, 197, 948 P.2d 1036, 1038 (1997) (citation omitted).

4. The holding in Vance and Langley with regard to when the right to bail in a misdemeanor case

## III. DISCUSSION

To restate, the issue in this case is whether the police had any justification for holding Perez and his coin purse from 12:15 p.m. until the detectives arrived and conducted the dog-sniff at 2:10 p.m. The prosecution challenges the circuit court's COL 2, 4, 5, and 6, in which the court concluded that there was no justification. The prosecution argues that these conclusions are erroneous as a matter of law for two reasons: (1) it could reasonably have taken the police two hours to process Perez on the shoplifting charge and the dog in fact arrived within two hours, such that Perez's release was not unnecessarily delayed; and (2) the police had reasonable suspicion to detain Perez, independent of the shoplifting charge, after the "unusual activity in the toilet." In response to the first point, Perez concedes that if the dog had arrived within one hour, the detention and search would have been valid, but "[b]y detaining Perez an additional hour based only on his reputation as a drug dealer and his reaction to Gandolf's attempt to open his purse, the police violated Perez's right to release without unnecessary delay." As to the second point, Perez argues that the police did not have reasonable suspicion to detain him apart from the shoplifting charge, and even if reasonable suspicion existed, the length of the detention was excessive. For the reasons set forth below, we conclude that Perez's arguments have merit.

A. *The Circuit Court Did Not Err in Concluding that Perez's Detention Could Not Be Justified Pursuant to the Shoplifting Arrest.*

 Perez was initially arrested for shoplifting, a petty misdemeanor. *See* HRS §§ 708-830(8) (1993) and 708-833.5(3) (1993) (providing that where the value of the stolen property is less than $100, shoplifting is classified a petty misdemeanor). As both the prosecution and Perez acknowledge, this court has stated that "a person arrested for a petty misdemeanor or misdemeanor offense possesses not an absolute right to release, but rather a right to release without unnecessary delay upon payment of bail."[4] *State*

attaches was based on HRS § 804-4, Hawaiʻi

*v. Langley,* 62 Haw. 79, 81, 611 P.2d 130, 132 (1980) (per curiam); *see also State v. Vance,* 61 Haw. 291, 300–01, 602 P.2d 933, 940–41 (1979) (same). "[W]hat constitutes 'unnecessary delay' requires the consideration of all

> Rules of Criminal Procedure (HRCrP) Rule 5(a)(2) and Federal Rule of Criminal Procedure (FRCrP) Rule 5(a). *Vance,* 61 Haw. at 300–01, 602 P.2d at 940–41. *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 46 ("The right to bail before conviction or upon review, the form and amount thereof, and the matters of justification of sureties, forfeiture of bail, and exoneration of obligors and sureties shall be as provided by law. (See Hawai'i Revised Statutes, Chapter 804.)"). In the intervening years, the pertinent part of HRS § 804-4 has remained unchanged. *Compare* HRS § 804-4 (Supp.2005) (providing that, in cases such as Perez's, "a defendant may be admitted to bail before conviction as a matter of right") *with* HRS § 804-4 (1972) (providing that "a defendant may be admitted to bail before conviction as a matter of right"), *quoted in Vance,* 61 Haw. at 300, 602 P.2d at 940. Similarly, the pertinent language of FRCP Rule 5(a) remains unchanged. *Compare* FRCP Rule 5(a)(1)(A) (2005) (providing that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer ...") *with* FRCP Rule 5(a) (1972) (using the same "without unnecessary delay" language), *quoted in Vance,* 61 Haw. at 301, 602 P.2d at 941.

The Hawai'i rule, on the other hand, has undergone a change that requires mention. In the 1960 version, relied upon by the *Vance* Court, HRCP Rule 5(a)(2) provided in pertinent part as follows:

> Any person or officer who shall arrest a person without a warrant ... shall, except where and to the extent the detention of the arrested person is authorized by law, take the arrested person *without unnecessary delay* before the magistrate having jurisdiction, or, for the purpose of admission to bail, before any judge, other magistrate or officer authorized by law to admit the accused person to bail.

*Vance,* 61 Haw. at 300–01, 602 P.2d at 940 (emphasis and ellipsis in original). The current version of HRPP Rule 5(a), on the other hand, has separate rules for warrantless arrests and arrests with a warrant. The rule for arrests with a warrant maintains the original "without unnecessary delay" language. *See* HRPP Rule 5(a)(1) (2001) ("An officer making an arrest under a warrant shall take the arrested person without unnecessary delay before the district court having jurisdiction, or, for the purpose of admission to bail, before any judge or officer authorized by law to admit the accused person to bail."). In contrast, the rule for arrests without a warrant provides:

the facts and circumstances at the time." *Langley,* 62 Haw. at 81, 611 P.2d at 132. In *Vance* and *Langley,* a delay in defendants' admission to bail was held necessary due to their physical condition. *Langley,* 62 Haw.

> As soon as practicable, and, Rule 45 notwithstanding, not later than 48 hours after the warrantless arrest of a person held in custody, a district judge shall determine whether there was probable cause for the arrest. No judicial determination of probable cause shall be made unless there is before the judge, at the minimum, an affidavit of the arresting officer or other person making the arrest, setting forth the specific facts to find probable cause to believe that an offense has been committed and that the arrested person has committed it. If probable cause is found as aforesaid, an appropriate order shall be filed with the court as soon as practicable. If probable cause is not found, or a proceeding to determine probable cause is not held within the time period provided by this subsection, the arrested person shall be ordered released and discharged from custody.

HRPP Rule 5(a)(2) (2001). Curiously, the rule is now silent as to when the subject of a warrantless arrest must be presented for admission to bail, although the language "person held in custody," does by opposition implicitly admit of cases where a warrantless arrestee is released, presumably on bail, after arrest. HRPP Rule 5(a)(3) further provides that the probable cause hearing in subsection (a)(2) may be combined with a bail hearing under subsection (a)(1). It thus appears that the current rule may be read to authorize the police to hold a warrantless arrestee until it is practicable to make a probable cause determination. However, it would be odd, if not unjust and arbitrary, that a person for whom a probable cause determination has already been made (*i.e.,* an initial judicial imprimatur on the validity of the seizure has already been given and thus there is presumably less likelihood that the person has been seized without justification) is entitled to admission to bail "without unnecessary delay" while a person whose seizure has not been passed upon at all by the judiciary has a lesser entitlement to bail. Given that the Hawai'i constitution protects defendants from the "unreasonable or arbitrary denial of bail," *Huihui v. Shimoda,* 64 Haw. 527, 539, 644 P.2d 968, 976 (1982), we conclude that the better approach is to read the current rule's silence, along with the lack of any material change in HRS § 804-4, as implicitly continuing the prior rule under which persons had equal right of admission to bail (*i.e.,* without unnecessary delay), regardless of whether they were arrested with a warrant or without. This approach is particularly appropriate where, as here, the prosecution does not dispute the applicability of the *Vance-Langley* holding. Accordingly, we follow that holding here despite the change in the language of the rule.

at 82, 611 P.2d at 132 (holding that delay was necessary due to defendant's intoxicated condition); *Vance*, 61 Haw. at 302, 602 P.2d at 941 (holding that delay was necessary due to defendant's disturbed and belligerent state). However, the *Vance* Court clarified that "a delay will be found necessary only upon clear justification; the defendant's right to freedom from unreasonable searches and seizures prohibits such delays as a pretext to unjustified pre-incarceration searches." *Vance*, 61 Haw. at 303 n. 11, 602 P.2d at 941 n. 11. *See also Langley*, 62 Haw. at 81–82, 611 P.2d at 132 (same). Here, the prosecution does not challenge the circuit court's finding that normal processing time for shoplifting arrests runs from one to two hours, but is one hour if things are running smoothly. It is also undisputed that Perez's detention ran into a second hour not because things were not running smoothly, but because his processing had ceased while waiting for the narcotics detectives. Accordingly, given that the second hour of Perez's detention was concededly pretextual, it cannot be justified under *Vance* and *Langley*.

The prosecution nevertheless makes an additional attempt to justify the search of the coin purse as a search incident to the shoplifting arrest for fruits of the crime. In *State v. Kaluna*, this court held that "where the nature of the offense makes it reasonable to assume that evidence of that offense may be located on the arrestee's person or in the belongings in his possession at the time of the arrest, then the police may search those areas without a warrant." 55 Haw. 361, 372, 520 P.2d 51, 60 (1974) (citation and footnote omitted). The *Kaluna* Court noted that "a search conducted at the station house a reasonable time after a valid arrest is no less 'incident' to that arrest than one conducted at the scene thereof." *Id.* at 364–65, 520 P.2d at 56 (citation omitted). Here, the prosecution argues that, given that Perez had been arrested for shoplifting, "there was a distinct possibility that additional fruits of the crime could have been secreted within the change purse," and thus the police could validly have continued to unzip and look within the purse during the station-house

search that took place a few minutes after the arrest at the KTA store. The prosecution reasons that if *Kaluna* would have authorized a warrantless search of Perez's purse, it would be perverse to penalize the police for having taken the extra step of trying to obtain a search warrant.

This argument is without merit due to the time lag between Perez's arrest and the search of the coin purse. *Kaluna* only authorizes searches incident to a lawful arrest if they are conducted "within a reasonable time" after arrest; here, however, the police aborted the initial search and chose to detain Perez and his purse for an additional hour beyond the necessary time for processing on the shoplifting charge. That one-hour detention of Perez's person (and purse), as a separate seizure leading to a separate search, must be separately justified. *See State v. Goudy*, 52 Haw. 497, 503, 479 P.2d 800, 804 (1971) ("[A]n investigative action which is reasonable at its inception may violate the constitutional protection against unreasonable searches and seizures by virtue of its intolerable intensity and scope."). *See also Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stating that the inquiry into the reasonableness of a search is twofold, requiring first whether the action was justified at its inception, and second, whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place"), *quoted with approval in In re Doe*, 104 Hawai'i 403, 408, 91 P.3d 485, 490 (2004), *overruled on other grounds by In re Doe*, 105 Hawai'i 505, 507, 100 P.3d 75, 77 (2004). Because the search of the coin purse as actually conducted (*i.e.*, a search for drugs two hours after arrest) was not reasonably related either in time or to the circumstances which *might* have justified it [5] (*i.e.*, the shoplifting arrest and a search for evidence of that offense) in the first place, it cannot retroactively be sanitized under the umbrella of the earlier arrest. Accordingly, the prosecution's alternative attempt to justify the search and seizure pursuant to the shoplifting arrest also fails.

---

5. In holding that the search of the coin purse cannot be justified under *Kaluna* due to the time lag, we need not decide whether "the nature of the offense [would have made] it reasonable to assume that evidence of that offense" might have been located in the coin purse.

## B. The Circuit Court Did Not Err in Concluding that the Police Did Not Have Reasonable Suspicion to Detain Perez.

■ The prosecution next contends that, even if Perez's detention cannot be justified pursuant to the shoplifting arrest, it was justified as an investigative action based on reasonable suspicion. First, the prosecution cites to Perez's testimony at the suppression hearing, where he admitted that he flushed a Pyrex tube, which he had intended to use for smoking crystal methamphetamine, down the toilet. The prosecution contends that Perez's "wilful destruction of drug paraphernalia gave the police reasonable suspicion to believe that [he] was in possession of additional contraband or paraphernalia." However, as Perez correctly notes, the foregoing is all hindsight—the police did not have the benefit of Perez's admissions *at the time* of the arrest and detention, nor could they see what he was doing in the toilet. As the circuit court found in its unchallenged FOF, the police were aware only of a pinging sound, which gave rise to the concern, subsequently dispelled by the pat-down search, that Perez might have a weapon.

■ It is axiomatic that subsequently discovered facts cannot retroactively justify an investigative action. For example, this court recently affirmed that the existence of probable cause is determined based on the facts and circumstances as known to the police *at the time* of the search or seizure. *State v. Kido*, 109 Hawai'i 458, 462, 128 P.3d 340, 344 (2006). Similarly, reasonable suspicion, which may be used to justify an investigative search or seizure under circumstances not rising to the level of probable cause, requires the police

> to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

*State v. Barnes*, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977) (internal quotation marks and citations omitted). Again, this standard requires reasonable suspicion to be based on facts known to the police *at the time of the search or seizure.* Here, the police did not have knowledge on July 14, 2004 of the facts testified to by Perez at the suppression hearing, and thus they cannot serve as a basis for reasonable suspicion justifying his detention.

However, the prosecution also points to facts that were known to the police at the time of the detention, namely that: (1) Perez had stolen a container that can be used to smoke crystal methamphetamine; (2) Perez had refused to consent to the search of the coin purse; and (3) Detective Hodson had provided information that Perez was a known drug dealer. The circuit court concluded, however, that these facts did not give rise to reasonable suspicion and we agree.

■ A man of reasonable caution would not have been warranted in detaining Perez's purse, much less Perez's person, because the facts identified by the prosecution do not amount to specific and articulable facts suggesting that drugs or drug paraphernalia were in the purse or otherwise in Perez's possession. First, "under the prevailing view . . . refusal [to consent to a search] may not . . . be considered with other information in making a determination of probable cause or reasonable suspicion." 4 Wayne R. LaFave, Search and Seizure § 8.1, at 6 n. 10 (4th ed.2004), *quoted with approval in Clark v. Webster*, 384 F.Supp.2d 371, 382 n. 21 (D.Me.2005). Second, although awareness of prior criminal history may factor into a reasonable suspicion determination, *State v. Kaleohano*, 99 Hawai'i 370, 380, 56 P.3d 138, 148 (2002), here the fact that Perez was a known drug-dealer, when coupled with the fact that he had stolen an item that could be used to smoke crystal methamphetamine, gave rise only to the inchoate suspicion that Perez might intend to engage in drug activity *in the future.* There were no specific facts, however, to suggest that criminal activity was *currently* afoot (*i.e.,* that Perez had drugs or drug paraphernalia in his possession). Consequently, neither reasonable suspicion [6] nor probable cause to detain Perez

---

6. In light of our conclusion that reasonable suspicion to detain Perez did not exist, we do not address his alternative argument that, even if reasonable suspicion existed, the length of the detention was excessive.

existed, and the circuit court correctly concluded that "detaining [Perez] for the sole purpose of a canine screen was, under the circumstance, unreasonable and unlawful." [7]

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's September 30, 2005 order granting Perez's motion to suppress.

---

7. It is axiomatic that because the subsequent search and evidence recovered therefrom were the fruits of an unlawful seizure, the circuit court properly suppressed the evidence. *See State v. Pau'u*, 72 Haw. 505, 509, 824 P.2d 833, 835 (1992) (holding that evidence obtained in violation of the federal and state constitutional prohibitions against unreasonable search and seizure may not be used to secure a defendant's conviction); *State v. Temple*, 65 Haw. 261, 272, 650 P.2d 1358, 1365 (1982) (holding that an illegal seizure fatally taints all subsequent police actions and requires suppression of evidence recovered as a result thereof).