**Electronically Filed
Supreme Court
SCWC-16-0000100
22-MAY-2019
09:22 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

KEKOA IONA,
Petitioner/Defendant-Appellant.

_____

SCWC-16-0000100

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000100; CR. NO. 14-1-0648)

May 22, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

This case arises from a pat-down following an investigative stop in April 2014, in Honolulu.  The pat-down occurred after a lieutenant with the Honolulu Police Department ("HPD") noticed Petitioner/Defendant-Appellant Kekoa Iona ("Iona") and two other individuals riding bicycles lacking tax decals, which are required by law on all bicycles with wheels twenty inches or more in diameter.

The police may, in appropriate circumstances and in an appropriate manner, detain individuals for brief, temporary investigative stops based on reasonable suspicion of a crime without violating the prohibition on unreasonable searches and seizures in the United States and Hawaiʻi Constitutions. However, the police may not prolong these temporary detentions, known as Terry stops,[1] any longer than needed to handle the matter for which the stop was made.

We hold that Iona was seized longer than was necessary for the police to conduct an investigation that confirmed the lieutenant's reasonable suspicion that the required tax decal was missing and to issue a citation to Iona for riding a bicycle without a tax decal.

After the time necessary for the police to conduct an investigation confirming the absence of the required tax decal and to issue a citation for the missing decal had expired, a warrant check came back from dispatch indicating that Iona had an outstanding warrant. Iona was arrested at the scene based on the outstanding warrant, and a search incident to arrest revealed a small amount of drugs and drug paraphernalia. Because the warrant check came back after the span of time

---

[1] See Terry v. Ohio, 392 U.S. 1, 22 (1968) (recognizing "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest").

necessary for the police to obtain Iona's identifying information from him and to write and issue the citation, Iona's arrest was illegal.  Since the arrest was illegal, the evidence obtained as a result of the arrest was fruit of the poisonous tree.  Iona's pre-trial motion to suppress the evidence from the search incident to arrest should have been granted, and the evidence seized as a result of that search should have been excluded from his trial.  Accordingly, we vacate the Intermediate Court of Appeals' ("ICA") judgment on appeal and the Circuit Court of the First Circuit's ("circuit court") judgment of conviction and sentence, and we remand the case to the circuit court for proceedings consistent with this opinion.

## I.  Background

At 10:40 a.m. on April 17, 2014, Lieutenant Brent Kagawa, an officer with the HPD, observed Iona and two other individuals on bicycles ride past him on Keeaumoku Street in Honolulu.  All three bicycles lacked tax decals, which all standard-sized bikes are required to display by state and local law.  Hawai'i Revised Statutes ("HRS") §§ 249-14, 249-15 (2001);[2] Revised Ordinances of Honolulu ("ROH") § 15-18.1 (Supp. 1995).[3]

---

[2]    HRS § 249-14(a) requires the owner of a bicycle with wheels twenty inches or more in diameter to register the bicycle and pay a registration fee.  Upon payment of the fee and registration, the owner is furnished with "a metallic tag or decal[,]" which must be affixed to the bicycle on "the upright post attached to the sprocket facing in the forward

(continued . . .)

3

Having observed what appeared to be the absence of the required decals, Lieutenant Kagawa identified himself, stopped all three men, and, in the words of the circuit court's findings of fact, "initiated an untaxed bicycle inquiry. He informed the three males that he had stopped them for untaxed bicycles." The officer queried the men individually about the status of the bikes. Initially, each man stated he owned the bike he was riding. As Lieutenant Kagawa took down this information, however, Iona changed his statement to say that he borrowed the bike from someone named "Nalu" at the park. Lieutenant Kagawa took some additional information, including their names, and then commenced a warrant check on all three individuals. Lieutenant Kagawa estimated this initial exchange took about three or four minutes.

In the meantime, two additional officers, Officers Alison Lynch and Raymond Chandler, arrived at the scene to

(. . . continued)

direction." HRS § 249-14(b). HRS § 249-15 authorizes police officers to seize a bicycle to which no tag or decal is affixed.

[3] ROH § 15-18.1 provides:

No person who resides within the City and County of Honolulu shall ride or propel a bicycle on any street, highway, alley, roadway or sidewalk or upon any public path set aside for the exclusive use of bicycles unless such bicycle has been licensed and a license plate two by three inches in size, or a license decal, is attached thereto as provided in this article.

The penalty for violating the decal requirement is a fine of between $15.00 and $100.00 for a first offense. ROH § 15-26.9(b) (Supp. 2004).

assist Lieutenant Kagawa.  Officer Lynch called nearby officers to assist.  When they arrived, Lieutenant Kagawa informed the two additional officers of the facts of the untaxed bicycle investigation and asked them to take over the investigation.  Lieutenant Kagawa testified that he was waiting until he had all the information at the end of the investigation before determining whether he would issue a citation for the lack of tax decals.

Officers Lynch and Chandler sought to obtain the bicycles' serial numbers and run them through the system to determine whether they were registered and, if registered, whether they were reported stolen.  The officers were only able to read the serial number on the bike Iona had been riding.  Once that serial number had been obtained, Officers Lynch and Chandler called dispatch to check the bike registration records in order to determine whether the bike was taxed or untaxed or had been reported stolen.

After a few minutes, dispatch confirmed that the bike was not registered to Iona or to someone named Nalu.  Instead, the bike was registered to a Wai'anae resident.  The bike had not been reported stolen.  Officer Chandler attempted to contact the registered owner but was unsuccessful.  He then contacted the police station in Wai'anae and requested that an officer from

that station drive to the registered owner's Wai'anae address in order to determine whether the bike was stolen.

The warrant check came back at 10:54 a.m., showing that Iona had an outstanding $100.00 bench warrant for contempt. A total of fourteen minutes elapsed between the initial stop and the return of the outstanding warrant information. At no time within the fourteen-minute period was a citation for failure to display a tax decal written or started to be written. Iona was arrested at the scene on the outstanding warrant. Incident to his arrest, he was patted down. The pat-down revealed a glass pipe in a plastic sleeve as well as a small, ziplock plastic bag containing a white, crystalline substance.

Prior to trial, Iona moved to suppress the glass pipe and the ziplock bag containing a white, crystalline substance, arguing that they were "fruit of the poisonous tree." He argued that he had been illegally seized, that the seizure continued well after its initial justification, that his arrest was therefore illegal, and that the evidence seized in the search incident to his arrest was "fruit of the poisonous tree" and should thus be excluded. He also argued that (1) a violation of HRS § 249-14 is not an arrestable offense, (2) the only penalty authorized for a violation of HRS § 249-14 is the seizure of a bicycle that does not display the required registration decal, (3) Lieutenant Kagawa did not have reasonable suspicion to

further detain Iona in order to determine if he had an outstanding bench warrant, (4) Lieutenant Kagawa had no basis to request a warrant check on Iona at the point in time that he did because Lieutenant Kagawa did not suspect Iona of committing an arrestable crime or violation at that time, and (5) Lieutenant Kagawa was not authorized to conduct a warrant check under HRS § 803-6 (2014).

Iona was tried on October 12, 2015.[4] After a bench trial on stipulated facts, Iona was convicted of one count of promoting a dangerous drug in the third degree and one count of unlawful use of drug paraphernalia. See HRS § 712-1243 (2014); HRS § 329-43.5(a) (2010). He was sentenced to two open five-year terms of imprisonment, to run concurrently, and fined $1,000. He appealed to the ICA.

The ICA issued its summary disposition order on June 29, 2017. State v. Iona, No. CAAP-16-0000100, 2017 WL 2812940 (App. June 29, 2017) (SDO). The ICA concluded that the evidence discovered in the search incident to Iona's arrest on the outstanding warrant was not fruit of the poisonous tree. Id. at *3. It held that the length of the stop was reasonable "[b]ased on the police testimony regarding the steps regularly taken in conjunction with an untaxed bicycle investigation" and "Iona's

---

[4] The Honorable Edward H. Kubo, Jr. presided.

shifting statements regarding the bicycle's ownership, which were inconsistent with the bicycle's registration[.]" Id. at *2.  As to Iona's pretext argument, the ICA held that there was "no evidence that follow up inquiries regarding the bicycle's ownership were pretextual or that the officers delayed the attempts to reach the registered owner of the bicycle in order to prolong the warrant check." Id. Accordingly, the ICA affirmed the circuit court's judgment of conviction and sentence. Id. at *3. Iona applied for a writ of certiorari, and his application was accepted.

## II.  Standards of Review

An appellate court reviews a trial court's ruling on a motion to suppress de novo to determine whether, as a matter of law, the ruling was right or wrong. State v. Eleneki, 106 Hawai'i 177, 180, 102 P.3d 1075, 1078 (2004). A court's findings of fact "are reviewed under the clearly erroneous standard, and will not be set aside on appeal unless they are determined to be clearly erroneous." State v. Kaleohano, 99 Hawai'i 370, 375, 56 P.3d 138, 143 (2002) (internal citations and quotation marks omitted).

## III.  Discussion

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution "safeguard the privacy and security of individuals against

8

arbitrary invasions by governmental officials."  State v. Navas, 81 Hawai'i 113, 122, 913 P.2d 39, 48 (1996) (quoting Camara v. Mun. Court, 387 U.S. 523, 528 (1967)); see State v. Tau'a, 98 Hawai'i 426, 446 n.5, 49 P.3d 1227, 1247 n.5 (2002) (Acoba, J., dissenting) ("The fourth amendment was intended both to protect the rights of individuals and to prevent the government from functioning as in a police state." (quoting Donald L. Doernberg, The Right of the People: Reconciling Collective and Individual Interests Under the Fourth Amendment, 58 N.Y.U. L. Rev. 259, 260 (1983))).  Both prohibit unreasonable searches and seizures by government officials.  U.S. Const. amend. IV (prohibiting "unreasonable searches and seizures" and requiring a warrant based on probable cause as a condition of any search or seizure); Haw. Const. art. I, § 7 (prohibiting "unreasonable searches, seizures and invasions of privacy" and requiring a warrant based on probable cause as a condition of any search or seizure).

Given these constitutional protections, warrantless searches or seizures are presumed "invalid unless and until the prosecution proves that the search or seizure falls within a well-recognized and narrowly defined exception to the warrant

requirement."[5]  State v. Prendergast, 103 Hawai'i 451, 454, 83

P.3d 714, 717 (2004).  "If the prosecution fails to meet this

burden, the evidence obtained from the illegal search will be

suppressed as 'fruit of the poisonous tree.'"  Id. (quoting

State v. Fukusaku, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997)).

## A.   Constitutional Principles Governing Terry Stops

The temporary investigative detention of an individual

by the police without a warrant is constitutionally permissible

only within strict and narrow limits.  Terry, 392 U.S. at 19

("The scope of the search must be 'strictly tied to and

justified by' the circumstances which rendered its initiation

permissible." (quoting Warden, Md. Penitentiary v. Hayden, 387

U.S. 294, 310 (1967) (Fortas, J., concurring))); Kaleohano, 99

Hawai'i at 378–79, 56 P.3d at 146–47 ("Because temporary

investigative stops involve an exception to the general rule

requiring that searches and seizures be supported by probable

cause, the scope of such detentions must be narrow.").

These strict limitations on the constitutionally

permissible scope of a Terry stop govern both its initiation and

---

[5]     We have held repeatedly that exceptions to the warrant requirement are well-recognized and narrowly defined, and generally "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate."  State v. Wallace, 80 Hawai'i 382, 393, 910 P.2d 695, 706 (1996) (quoting State v. Clark, 65 Haw. 488, 493, 654 P.2d 355, 360 (1982)).

its duration.  The initiation of a temporary investigative detention by police is valid only "if they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot."  State v. Spillner, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007) (quoting State v. Kearns, 75 Haw. 558, 569, 867 P.2d 903, 908 (1994)); State v. Heapy, 113 Hawai'i 283, 285, 151 P.3d 764, 766 (2007) ("It is axiomatic that reasonable suspicion to justify a stop must relate to criminal activity."); State v. Barnes, 58 Haw. 333, 337, 568 P.2d 1207, 1211 (1977) (explaining that "such an intrusion upon personal liberty must be reasonable and be based on something more substantial than inarticulate hunches" (quoting State v. Goudy, 52 Haw. 497, 501, 479 P.2d 800, 803 (1971))).  In addition, under the Hawai'i Constitution, a Terry stop may last no longer than is absolutely necessary under the circumstances to handle the matter for which the stop was made.  State v. Estabillio, 121 Hawai'i 261, 271, 218 P.3d 749, 759 (2009) ("In order to pass constitutional muster, the length of time the officer could permissibly detain the defendant must have been 'no greater in intensity than absolutely necessary under the circumstances.'" (emphasis added) (brackets omitted) (quoting State v. Barros, 98 Hawai'i 337, 342-43, 48 P.3d 584, 589-90 (2002))).

11

**B.    The Perez Test and Vehicle Stops**

In Hawai'i, the constitutional principles governing unreasonable searches and seizures in the context of traffic stops have been synthesized into a two-part test.  See State v. Perez, 111 Hawai'i 392, 397, 141 P.3d 1039, 1044 (2006).  Unless the police action during a vehicle stop satisfies both parts of the Perez test, the police action is unlawful, and "the evidence originating from that unlawful action must be suppressed." State v. Alvarez, 138 Hawai'i 173, 182, 378 P.3d 889, 898 (2016).

The first part of the Perez test requires that the investigative stop must be justified at its inception.  Perez, 111 Hawai'i at 397, 141 P.3d at 1044.  "To justify an investigative stop, . . . the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Alvarez, 138 Hawai'i at 182, 378 P.3d at 898 (ellipses in original) (quoting Barnes, 58 Haw. at 338, 568 P.2d at 1211); see also Estabillio, 121 Hawai'i at 273, 218 P.3d at 761 (holding that under the first part of the Perez test, a seizure was clearly justified at its inception when the officer had a reasonable suspicion that the defendant was "driving a vehicle with a fraudulent registration sticker").

The second part of the Perez test requires that a search or seizure must be "reasonably related in scope to the

12

circumstances which justified the interference in the first place." Alvarez, 138 Hawai'i at 182, 378 P.3d at 898 (quoting Perez, 111 Hawai'i at 397, 141 P.3d at 1044). The constitutionally permissible scope of a vehicle stop has two components. First, "it must 'last no longer than is necessary to effectuate the purpose of the detention.'" Id. (quoting Estabillio, 121 Hawai'i at 270, 218 P.3d at 758); see also Estabillio, 121 Hawai'i at 271, 218 P.3d at 759 ("In order to pass constitutional muster, the length of time the officer could permissibly detain the defendant must have been 'no greater in intensity than absolutely necessary under the circumstances.'"[6] (brackets omitted) (quoting Barros, 98 Hawai'i at 342-43, 48 P.3d at 589-90)). "Second, the subject matter and intensity of the investigative detention must be limited to that which is justified by the initial stop." Alvarez, 138 Hawai'i at 182, 378 P.3d at 898.

---

[6] The "absolutely necessary under the circumstances" standard derives from our view that

> the right to be free of unreasonable searches and seizures under article, I, section [7] of the Hawaii Constitution is enforceable by a rule of reason which requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances.

State v. Kaluna, 55 Haw. 361, 369, 520 P.2d 51, 58-59 (1974) (internal quotation marks and footnote omitted).

**C.  Under the circumstances presented here, the officers'
seizure of Iona exceeded the scope of a constitutionally
permissible vehicle stop.**

Lieutenant Kagawa stopped Iona while Iona was riding a
bicycle.  For present purposes we consider a bicycle stop to be
a traffic stop (also called a vehicle stop).  "A stop of a
vehicle for an investigatory purpose constitutes a seizure
within the meaning of the constitutional protection against
unreasonable searches and seizures."  Estabillio, 121 Hawai'i at
270, 218 P.3d at 758 (quoting State v. Bolosan, 78 Hawai'i 86,
92, 890 P.2d 673, 679 (1995)); Spillner, 116 Hawai'i at 357, 173
P.3d at 504 ("There is no dispute that a traffic stop is a form
of seizure for constitutional purposes.").  Thus, Iona was
seized when Lieutenant Kagawa ordered him off his bike.  As to
its duration, Lieutenant Kagawa acknowledged during the hearing
on Iona's motion to suppress that the seizure lasted up to the
point at which Iona was arrested.

Having established that Iona was "seized" for
constitutional purposes, we proceed to analyze the facts in
light of the two-part Perez test.  We assume without deciding
that the first part of the Perez test, that "the action was
justified at its inception," was satisfied here.  Perez, 111
Hawai'i at 397, 141 P.3d at 1044.  Lieutenant Kagawa observed
that the bicycles of all three individuals he stopped lacked tax
decals.  Assuming that the lieutenant's observation concerning

14

the missing tax decals is analogous to observing a violation of traffic laws, the action was justified at its inception. Alvarez, 138 Hawai'i at 182, 378 P.3d at 898 ("It is well settled that an investigative stop based on an officer's observation of an apparent traffic violation satisfies the first part of the Perez test.").

As to the second part of the Perez test, we hold that the time during which Iona was seized exceeded the duration necessary to accomplish the purpose for which he was stopped. See id. Here, the matter or purpose for which the stop was made was determined by Lieutenant Kagawa's observation that the bikes lacked tax decals. That lack of decals is what justified the initial stop of Iona. The circuit court's findings of fact based on testimony at the suppression hearing state that "Lt. Kagawa initiated an untaxed bicycle investigation" and that he informed the riders "he had stopped them for untaxed bicycles." However, it is undisputed that Iona was never cited during the Terry stop for riding a bicycle which failed to display a tax decal.

Instead, Iona was held until a warrant check was completed. Rather than issue a citation for failure to display a tax decal, the police called dispatch to determine if the bike was registered and, if so, to identity the owner and determine whether the bike was reported stolen. Dispatch confirmed the

bike was registered and that it was not reported stolen.[7] The pursuit of inquiry relevant to theft was not the purpose of the stop, although the stop was used as an opportunity to make such inquiries.[8]

Because what justified the initial stop was the lack of a tax decal on the bike Iona was riding, the time span needed to handle that matter was the sum of the time required under the circumstances for Lieutenant Kagawa to confirm his reasonable suspicion that the decals were missing, the time necessary to obtain the identifying information of Iona required to fill out the citation for riding without a decal, and the time necessary to write and issue the citation.[9] See State v. Wyatt, 67 Haw. 293, 300, 687 P.2d 544, 549 (1984) ("The obvious violation of the Traffic Code gave [the officers] reason to seek information necessary for the issuance of a citation."). It took only seconds to confirm the decals were missing. Lieutenant Kagawa

---

[7] The police "may investigate matters unrelated to the original stop if they have an independent basis for reasonable suspicion to indicate that criminal activity is afoot[.]" Alvarez, 138 Hawaiʻi at 184, 378 P.3d at 900 (emphasis added). Here, however, there was no such basis. At oral argument, the State conceded that no theft investigation occurred at any point.

[8] Calls were made by the police to locate the owner without success; consequently, police at the scene called the Waiʻanae police station and requested that it send an officer to the registered owner's residence.

[9] HRS § 291C-165(a) (2007) states that "[t]here shall be provided for use by authorized police officers, a form of summons or citation for use in citing violators of those traffic laws which do not mandate the physical arrest of such violators."

testified that Iona gave him his correct name and date of birth within "maybe three, four minutes" after the initial stop. The warrant check came back fourteen minutes after the initial stop.

Under these circumstances, it was not constitutionally permissible for the police to forego the issuance of a citation and hold Iona. See Estabillio, 121 Hawai'i at 271, 218 P.3d at 759 ("In order to pass constitutional muster, the length of time the officer could permissibly detain the defendant must have been 'no greater in intensity than absolutely necessary under the circumstances.'" (emphasis added) (brackets omitted) (quoting Barros, 98 Hawai'i at 342-43, 48 P.3d at 589-90)). Officers have the discretion to confiscate a bicycle "liable for the payment of the required fees or which has no tag or decal affixed as required by section 249-14[.]" HRS § 249-15. At oral argument, the State took the position that the constitutionally permissible duration of the Terry stop at issue here could last as long as it took the officers in their discretion to decide whether or not to confiscate the bicycle. Oral Argument, State v. Iona (SCWC-16-0000100) at 46:00-49:00, http://oaoa.hawaii.gov/jud/oa/18/SCOA_011818_SCWC_16_100.mp3. We disagree.

What justified the initial Terry stop of Iona was a missing tax decal. As Lieutenant Kagawa testified, he stopped all three riders for violating a "[r]evised ordinance,"

17

specifically, "1481 or something to that -- I'd have to look it up."  The ordinance that authorizes a police officer to issue a citation for a missing tax decal, ROH § 15-18.1, applies to any resident bicycle rider; it is not specific to the registered owner:

> No person who resides within the City and County of Honolulu shall ride or propel a bicycle on any street, highway, alley, roadway or sidewalk or upon any public path set aside for the exclusive use of bicycles unless such bicycle has been licensed and a license plate two by three inches in size, or a license decal, is attached thereto as provided in this article.

See also ROH § 15-26.9 (stating that "it is a violation for any person to violate any of the provisions of this traffic code" and providing for a range of fines); HRS § 291C-165(a) ("There shall be provided for use by authorized police officers, a form of summons or citation for use in citing violators of those traffic laws which do not mandate the physical arrest of such violators.").

For the police to issue the relevant citation under the ordinance, it is not necessary for the police to know whether the rider of the bicycle is also its owner.  Therefore, the subject matter of the investigative detention for which Iona was seized was limited to a citation for the missing decal.  See Alvarez, 138 Hawai'i at 182, 378 P.3d at 898 ("[T]he subject matter and intensity of the investigative detention must be limited to that which is justified by the initial stop.").  Once

the investigation relating to that subject matter was complete, the police should have informed Iona that he was free to leave, regardless of whether the police decided to confiscate the bicycle.

In conclusion, the phase of Iona's investigative detention relating to a police decision whether or not to confiscate the bicycle was not "reasonably related in scope to the circumstances which justified the interference in the first place." Id. (quoting Perez, 111 Hawai'i at 397, 141 P.3d 1044); see Rodriguez v. United States, 135 S. Ct. 1609, 1612 (2015) ("A seizure justified only by a police-observed traffic violation . . . 'becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission' of issuing a ticket for the violation." (brackets omitted) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005))).

Because the constitutionally permissible duration of the stop was limited to the time necessary to confirm the violation, obtain identification necessary to issue a citation, and write the citation, Iona's detention could not be prolonged by Lieutenant Kagawa to conduct a warrant check. By detaining Iona longer than necessary to write the citation, Lieutenant Kagawa clearly exceeded the reasonable time necessary to accomplish the purpose of the stop. Since the arrest was illegal, the evidence obtained as a result of the arrest was

"fruit of the poisonous tree."  Prendergast, 103 Hawai'i at 454, 83 P.3d at 717 (quoting Fukusaku, 85 Hawai'i at 475, 946 P.2d at 45).  Iona's pre-trial motion to suppress the evidence from the search incident to arrest should have been granted, and the evidence seized as a result of that search should have been excluded from his trial.

## IV.  Conclusion

For the reasons stated above, we vacate the ICA's July 28, 2017 judgment on appeal and the circuit court's January 25, 2016 judgment of conviction and sentence, and we remand the case to the circuit court for proceedings consistent with this opinion.

Henry P. Ting                    /s/ Mark E. Recktenwald
(William H. Jameson, Jr.
on the brief                     /s/ Paula A. Nakayama
and application)
for Petitioner                   /s/ Sabrina S. McKenna

Stephen K. Tsushima              /s/ Richard W. Pollack
for Respondent

                                 /s/ Michael D. Wilson



20