STATE OF HAWAII, Plaintiff-Appellee, *v.* EDWIN MADAMBA, Defendant-Appellant

NO. 6981

SEPTEMBER 10, 1980

OGATA, ACTING C.J., MENOR, LUM,
NAKAMURA, JJ., AND RETIRED JUSTICE
MARUMOTO IN PLACE OF RICHARDSON, C.J.,
RECUSED

OPINION OF THE COURT BY MENOR, J.

This is an appeal by the defendant who was convicted in the district court of violating the provisions of HRS § 134-6 (1976).[1] He appeals from the judgment and sentence of the trial court. At issue is whether the trial court should have granted his motion to suppress as evidence a firearm which was recovered from his vehicle by the police.

At noon of May 6, 1977, Officers Dennis Kim and Dwight Lopez were having lunch at a restaurant on Richards Street when a man suddenly ran up to them yelling that someone in the building had been shot. The officers ran through the kitchen area and, exiting through the rear door of the restaurant, saw the blood-stained body of Josiah Lii lying in the hallway. Officer Kim immediately ran to his vehicle to radio for an ambulance. After making the call, he returned to Lii's body and found Mrs. Lii leaning over her husband and crying out loudly: "Jeffrey did it. Jeffrey Kealoha." Officer Kim thereupon returned to his vehicle and broadcast the information that Jeffrey Kealoha was the prime suspect in the shooting.

Officer Keith Perry was one of the officers assigned to locate Jeffrey Kealoha. Knowing that Kealoha worked at 1935 Hau Street, the officer drove to that address and upon arrival

---

[1] HRS § 134-6 (1976) provides:

Place to keep firearms; loaded firearms, when prohibited. Except as provided in sections 134-5 and 134-9, the possession of all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn, but it shall be lawful to carry firearms or ammunition, or both, in a wrapper or other suitable container from the place of purchase to the purchaser's home, place of business, or place of sojourn, or between these places upon change of place of business, abode, or sojourn, or between these places and a place of repair or a target range.

It shall be unlawful for any person to have in his possession or to carry on any public highway any firearm loaded with ammunition; provided that the provisions of this paragraph shall not apply to any person who has in his possession or carries a pistol or revolver and ammunition therefor in accordance with a license or permit issued, as provided in section 134-9.

Any person who violates any provision of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

immediately spotted Kealoha's 1976 Oldsmobile sedan in the parking lot. No one was in the vehicle at the time, so the officer stopped his car on the street and waited. Shortly thereafter he saw the defendant, Edwin Madamba, enter the Oldsmobile and drive it to the side of the IBEW building where Jeffrey Kealoha soon appeared. Kealoha was carrying what appeared to the officer to be a rifle case. When the two men drove off, the officer trailed the vehicle until he lost sight of it in the Kamehameha Housing area in Kalihi. Because his car radio was not working, he asked Officer Julius Durham who was also in the area to broadcast the information that Kealoha's vehicle had been seen in the Kamehameha Housing area.

Officer William Burgess who had heard the radio relay thereafter spotted the described Oldsmobile proceeding in the Ewa direction on North King Street. He immediately relayed this information over the air. Officers Theodore Chun and Clayton Yamashiro promptly responded to the alert, and at the intersection of King and Kaili Streets saw the suspect Oldsmobile stopped for a traffic light on King Street. The officers thereupon maneuvered their vehicle to the left and slightly ahead of the Oldsmobile. Almost simultaneously, Officer Burgess drove up and stopped, and with shotgun in hand ran towards the Oldsmobile. Officer Yamashiro also left his vehicle and assumed a covering position with his rifle, while Officer Chun approached the Oldsmobile with sidearm drawn. Officer Burgess reached it first and ordered the defendant to step out with his hands above his head. Jeffrey Kealoha was no longer in the vehicle. By that time at least three more police squad cars had converged upon the scene. While the defendant was being frisked by the police at the rear of the Oldsmobile, Officer Chun looked into the vehicle from the outside and through the open car door saw the butt end of a revolver protruding from a case lying on the front seat of the automobile. The firearm was seized and it is this evidence which the defendant sought to have suppressed.

Initially, we find that the police restraint upon further movement of the Oldsmobile and its driver was proper. This, however, does not end our inquiry for the defendant has also

argued that even if the stop was authorized, the police exceeded their authority in ordering him out of the automobile. *See State v. Joao, Jr.,* 56 Haw. 216, 533 P.2d 270 (1975). What gives meaning to his argument is that while he concedes that a firearm which is in plain view from the outside of an automobile may properly be seized, *State v. Hanawahine,* 50 Haw. 461, 443 P.2d 149 (1968); *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971), he points out that it was only after ordering the defendant out of the vehicle that the police were able to see the revolver lying on the front seat through the open car door.[2] This was essentially the situation we faced in *Joao, Jr.*

It must be remembered that there are two distinct aspects to an investigative detention which falls short of an arrest based on probable cause. *Id.; State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Kea,* 61 Haw. 566, 606 P.2d 1329 (1980). The first aspect is the stop itself. In the general interest of effective crime prevention and law enforcement, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22 (1968); *State v. Barnes, supra* at 337, 568 P.2d at 1211. Where, therefore, an officer is in possession of information, the reliability of which has been sufficiently established, or where he can point to specific and articulable facts which would warrant a man of reasonable caution to believe that criminal activity involving the suspect is afoot, the officer is authorized to make a temporary investigative stop. *Id.; State v. Kea, supra; State v. Ogata,* 58 Haw. 514, 572 P.2d 1222 (1975). By these standards, the initial stop in this case was proper. Jeffrey Kealoha was the prime suspect in the shooting

---

[2] In his opening brief the defendant asserts, without contradiction by the State or by the record:

Testimony at trial showed that the gun was observed from the open door of the car after [defendant] Madamba alighted from the vehicle. If the officers had not ordered the [defendant] out of [the] vehicle the revolver would not have been in plain view.

of Josiah Lii, and the police were looking for him. The defendant had been seen driving away with Kealoha, and he was still driving the latter's automobile when he was stopped by the police.

The second aspect of the investigative stop, however, involves the right of the officer to further intrude upon the liberty of the person detained. In the case of the temporary detention of an individual, this intrusion ordinarily consists of a patdown of his person. In an automobile stop, it usually takes the form of an order directing the occupant to step out of his vehicle followed by a frisk of his person. The authority of the officer in these situations is strictly circumscribed and is permissible only where such action is required for the protection of the officer and others nearby, *Terry v. Ohio, supra,* and "from the specific conduct of the defendant, or from reliable information, or from the attendant circumstances, the officer may reasonably infer that the person stopped is armed and presently dangerous." *State v. Barnes, supra* at 338, 568 P.2d at 1212. Thus, in *State v. Joao, Jr., supra,* we found that while the initial stop was proper, the subsequent act of requiring the occupants to alight from their vehicle was an unwarranted intrusion upon their liberty.[3] This was a seizure of their persons within the meaning of the Fourth Amendment. *Id.* In that case, Officer Clarence De-Caires and his sergeant were patrolling Nimitz Highway during the early morning hours. They saw Joao drive by in his vehicle and because Officer DeCaires had been wanting to speak with him about his alleged involvement in a traffic accident which had occurred several days before, the officer decided to stop him for that purpose. After the stop, Officer DeCaires walked over to Joao and asked him for his driver's license. At the suppression hearing the officer testified that Joao responded by leaning forward "as if to get his license from his pocket." His superior officer, however, who was just getting out of the police car, became alarmed when he saw the

---

[3] Compare, State v. Ogata, 58 Haw. 514, 572 P.2d 1222 (1975) (ordering out for the bonafide purpose of administering a sobriety test to the driver-appellant).

driver bending forward and instructed Officer DeCaires to order the occupants out of the car. When they complied, the butt end of a pistol which was subsequently seized came into view. We affirmed the trial court's order suppressing the firearm as evidence, on the ground that there was no articulable basis for a reasonable inference that the occupants of the vehicle were then armed and dangerous. Requiring them to leave their vehicle, as a result of which the evidence came into view, was therefore not justified by the circumstances.

The same cannot be said, however, for the defendant in this case. A fatal shooting had taken place, and a probable homicide had been committed. The shooting of the victim had been confirmed by the police. The identity of the suspected killer had been made known to them by a citizen informant, who happened to be the wife of the victim and whose credibility the police had no reason to question. The defendant had thereafter been observed driving the suspect's Oldsmobile to the IBEW building where the alleged assailant apparently had been waiting for him. Before he entered the vehicle, the suspect had been observed carrying what appeared to be a rifle case. Although the suspect, Kealoha, was no longer in the automobile when the defendant was stopped, there was no assurance that whatever weapon Kealoha might have carried with him into the vehicle was likewise no longer in the automobile for potential use by the defendant. Considering the nature of his observed association with Kealoha, it was not unreasonable for the police to fear that the defendant himself might have been armed and dangerous. The police were entitled, as well as duty-bound, to conduct reasonable inquiries of the defendant regarding the whereabouts of Kealoha and of the defendant's own possible participation in the shooting episode. Absolute certainty that the individual accosted is armed is not a necessary predicate to self-protective action, and it would be unthinkable in the circumstances to suggest that the police could not have first ordered the defendant out of the automobile before initiating any inquiries. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio, supra* at 23.

Affirmed.[4]

*Evan R. Shirley (Shirley & Jordan*, of counsel) for defendant-appellant.

*Glenn M. Miyajima*, Deputy Prosecuting Attorney for plaintiff-appellee.

---

[4] We find the defendant's other specifications of error to be completely without merit.