STATE OF HAWAII, Plaintiff-Appellee, *v.* SOPO FAALAFUA, also known as Maka, and Alikamaka Lehano, Defendant-Appellant

NO. 7736

CR. NO. 52787

MARCH 11, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., RETIRED JUSTICES OGATA AND MENOR, ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* The defendant was convicted of carrying a .22 caliber pistol without a permit in violation of HRS § 134-9 (1976). He appeals from the judgment and sentence of the trial court. Oral argument was ordered waived by this court. At issue is whether the trial court erred in denying his motion to suppress.

On March 19, 1979, at approximately 2:55 a.m., Officer James Cooper of the Honolulu Police Department, while on duty with his beat partner, Officer George DeRamos, in the Hotel Street area in the City and County of Honolulu, was approached by a female at the corner of Hotel and Smith Streets. The female was commonly known on the street as "Star" and was allegedly a prostitute. Officer Cooper had known Ms. Star for about six or seven months.

Star told Officer Cooper that her girlfriend had just "tricked" a guy who was packing a handgun. Officer Cooper understood this to mean that her friend had engaged in sexual intercourse with the male for a monetary consideration. She further stated that her girlfriend had seen the weapon itself within the hour at a place named "Sweet Sugar" located on Hotel Street near Nuuanu Avenue, and that the gun was possibly in a shoulder holster. She added that the man was still hanging around the Hotel Street area, lurking in doorways, trying to pick up other girls. But most of the girls, according to Star, had learned that he was packing a gun and were staying away from him. She described him as a Samoan male, approximately six feet tall, well-dressed in a black leather jacket, a black dress shirt, and black slacks. He appeared to be clean-cut and "fairly well-looking."

While Star was informing him of the incident, Officer Cooper was looking up and down the street to see if he could possibly spot the suspect. He observed two males standing on the sidewalk on the makai side of Hotel Street, mid-block between Bethel Street and Nuuanu Avenue. The two men were standing about a block or so from the officer and Ms. Star. Hotel Street was well-lit at that time of night. Officer Cooper noted that one of the males fit the description given by Star as he appeared to be wearing a brown leather jacket and black slacks, and he looked to be fairly well-dressed. The officer called Star's attention to this particular male. She looked in the direction of the two males and stated that she believed that one of them was the male to whom she had been referring. He later turned out to be the defendant.

Officer Cooper then noticed the defendant looking towards them, and soon thereafter saw the defendant suddenly turn, grab the second male, and walk briskly away in the Kokohead direction along Hotel Street. The officer informed his beat partner, Officer DeRamos, that he thought he had spotted the suspect. The officers

boarded their motorbikes and pursued the two males down Hotel Street to Bethel Street. They turned left on Bethel Street and caught up with the two men at the intersection of Bethel and Pauahi Streets. Their pursuit of the two males lasted less than a minute. Regarding what happened next, Officer Cooper testified:

> I stopped my bike, confronted the suspect. I told him I wanted to talk to him. As I approached him, I started a pat-down search, stop and frisk.
>
> \*   \*   \*   \*
>
> I asked him what he was doing in the area. He had no comment, didn't say anything, I started a frisk, he favored his left side. He started to back away.

As a result of the frisk, the .22 caliber pistol was discovered and seized.

The officer was justified in making a brief investigative stop of the defendant. Beyond that, however, he could not constitutionally engage in a more intrusive interference with the defendant's liberty. His motion to suppress, therefore, should have been granted. There was nothing in the conduct of the defendant to suggest that he was carrying a weapon. See *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972). In *State v. Barnes*, 58 Haw. 333, 338, 568 P.2d 1207, 1212 (1977), we pointed out that a search conducted in connection with a temporary investigative stop is strictly limited to that which is minimally necessary for the discovery of weapons which might be used against the officer and others nearby, and said that "the search and seizure in a stop and frisk situation is justified only if from the specific conduct of the defendant, or from reliable information, or from the attendant circumstances, the officer may reasonably infer that the person stopped is armed and presently dangerous." On this particular point, Officer Cooper testified:

> Q. When you eventually caught up with Mr. Faalafua, your intent was merely to stop and frisk him, correct?
>
> A. Yes, sir.
>
> Q. Because you, in your estimation, you had no probable cause to arrest him at that point, correct?
>
> A. Yes, sir.
>
> Q. Now, you acted solely upon the information provided to you by Miss Star, correct?
>
> A. Yes, sir.

Q. If, assuming, Officer, you were not provided with that information from Miss Star, would you say that the conduct of the defendant at the time you saw him was suspicious, that criminal activity was afoot?

A. No, sir.

Q. Would you have suspected that Mr. Faalafua was armed and presently dangerous?

A. No, sir.

The reliability of Ms. Star's secondhand information was not sufficiently established. *Compare, State v. Yaw,* 58 Haw. 485, 572 P.2d 856 (1977). When he was asked at the suppression hearing whether he made any attempt to verify the information he received from Ms. Star, the officer replied: "I attempted to question Star on the matter, but she refused to give any information and didn't really want to testify in this case."

Reversed and remanded.

*Riccio M. Tanaka,* Deputy Public Defender, on the brief for defendant-appellant.

*Arthur Ripley, Jr.,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.