STATE OF HAWAII, Plaintiff-Appellee, *v.* EDGARDO P. UDDIPA, Defendant-Appellant

NO. 8325

(CRIMINAL NO. 55384)

SEPTEMBER 30, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant-appellant appeals his conviction of carrying a pistol without a permit in violation of Hawaii Revised Statutes § 134-9

(1976). The only issue before us is whether the trial court erred in admitting the pistol as evidence in the case.[1] We affirm.

On November 18, 1980, at 8:41 p.m., uniformed officer Phillip Sunada (Sunada) of the Honolulu Police Department was dispatched to a fight reported at 1134 Gulick Avenue, Honolulu. Sunada had been a police officer for over thirteen years. Arriving at the scene three minutes later, he observed that Police Officer Kim (Kim) was already there on the unimproved sidewalk fronting the address talking to a man with a "bloody face." No fight was in progress.

Sunada looked beyond Kim and the man with the "bloody face" toward the rear end of a covered garage. He saw five or six men cleaning up the area. One of them had a broom and was sweeping up broken glass and debris. He noticed two men, apart from this group, standing with their backs to the road. One of them, who turned out to be appellant, kept looking over his right shoulder in Sunada's and Kim's direction and appeared to be either "trying to stuff something down" or trying "to get something out from the waist band of his pants." Sunada "had an idea it was possibly a weapon."

Cautiously but quickly, Sunada approached appellant. Appellant's hand was moving about in the area of his waist band. Sunada grabbed appellant's right arm, pulled it away from the waist band, and with his other hand touched appellant's waistline area. He felt a hard object and pulled appellant's pants away from his body. A semi-automatic pistol fell through appellant's right pants leg to the concrete floor of the garage. Sunada then arrested appellant.

Appellant contends that the search of his person and seizure of the pistol was illegal and that the use of the pistol as evidence should have been suppressed. We disagree.

In ruling on the validity of the search and seizure, we have reviewed the testimony presented at both the pretrial hearing on the motion to suppress and the bench trial. "In determining whether a trial court erred in admitting evidence claimed to have been illegally seized, an appellate court will usually not limit itself to the testimony received on the pretrial motion to suppress, but will also consider

---

[1] Appellant's motion to suppress was heard and decided by Circuit Judge Wendell K. Huddy on May 1, 1981. Appellant was convicted after a bench trial before Circuit Judge Philip T. Chun on May 14, 1981.

pertinent testimony given at trial." 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* 2d § 678, at 805 (1982). *See also Carroll v. United States*, 267 U.S. 132 (1925); *United States v. Smith*, 527 F.2d 692 (10th Cir. 1975). *Cf. State v. Crowder*, 1 Haw. App. 60, 613 P.2d 909 (1980) (review of validity of arrest).

The fundamental laws of our nation and state[2] decree that a person is entitled to be free from unreasonable governmental intrusion. However, in the interest of crime prevention and detection, *Terry v. Ohio*, 392 U.S. 1, 22 (1968), sanctions the investigative detention of a person by a police officer "in appropriate circumstances and in an appropriate manner" even absent a probable cause for arrest.

In the application of the *Terry* doctrine, our supreme court has developed certain guidelines. In *State v. Madamba*, 62 Haw. 453, 617 P.2d 76 (1980), the court stated that an investigative detention which does not measure up to an arrest based on probable cause consists of two aspects. The court went on to say:

The first aspect is the stop itself. In the general interest of effective crime prevention and law enforcement, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *State v. Barnes; supra,* [58 Haw.] at 337, 568 P.2d at 1211. Where, therefore, an officer is in possession of information, the reliability of which has been sufficiently established, or where he can point to specific and articulable facts which would warrant a man of reasonable caution to believe that criminal activity involving the suspect is afoot, the police is authorized to make a temporary investigative stop. [citations omitted]

\*    \*    \*    \*    \*

The second aspect of the investigative stop, however, involves the right of the officer to further intrude upon the liberty of the person detained. In the case of the temporary detention of an individual, this intrusion ordinarily consists of a patdown of his

---

[2] *See* U.S. CONST. amend. IV and HAWAII CONST. art. 1, § 7.

person. In an automobile stop, it usually takes the form of an order directing the occupant to step out of his vehicle followed by a frisk of his person. The authority of the officer in these situations is strictly circumscribed and is permissible only where such action is required for the protection of the officer and others nearby, *Terry v. Ohio, supra,* and "from the specific conduct of the defendant, or from reliable information, or from the attendant circumstances, the officer may reasonably infer that the person stopped is armed and presently dangerous." *State v. Barnes, supra,* at 338, 568 P.2d at 1212.

*Id.* at 456-57, 617 P.2d at 78-79. *See also State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980).

What facts are "specific" and "articulable" so as to justify an investigative stop cannot be explicitly defined. The cases indicate "the totality of the circumstances — the whole picture — must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417 (1981); *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971). The assessment of the "whole picture" must, first, "be based upon all of the circumstances" and, second, "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." Such assessment process "does not deal with hard certainties, but with probabilities." All of the evidence constituting the "whole picture" must be "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez, supra,* at 418.

Applying these standards and assessing the totality of the circumstances in the case before us, we are convinced that the stop and frisk of appellant was proper. Sunada was informed over the police radio that there was a fight at the designated address. Arriving at the scene, he saw Kim talking to a man with a bloody face and broken glass being swept up. He observed appellant looking over his right shoulder and trying either to stuff something down or pull something out from the waistband of his pants. He thought the "something" was a weapon. Under the circumstances, it was reasonable for the officer, who had been on the police force for over thirteen years, to infer that the people present, including appellant, had been involved in a fight, that someone had gotten hurt in the fight, that weapons may have been used, that appellant's behavior and movements were suspicious, that appellant was concealing or

drawing out a weapon, and that he should disarm appellant to protect himself and Kim. The totality of the circumstances justified the officer's actions. In *Terry, supra,* the Court stated:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24.

Appellant argues that a "stop and frisk" procedure consists of two aspects — the temporary investigative stop and the search for weapons. *State v. Madamba, supra.* The search aspect is "generally limited to a patting down of the detainee's outer clothing." *State v. Barnes,* 58 Haw. 333, 339, 568 P.2d 1207, 1212 (1977). Appellant complains that Sunada should have patted him down first instead of sticking his fingers in his pants.

Here, Sunada personally saw appellant trying to either stuff in or pull out what the officer believed to be a weapon from his pants. Under the circumstances, the officer's almost simultaneous action of grabbing appellant's right arm and with his other hand touching appellant's waistline area, then sticking his fingers in appellant's pants to pull his pants away from his body after feeling a hard object was not unreasonable. Sunada should not be denied the opportunity to protect himself and Kim from attack by a person suspected of carrying a weapon. *Adams v. Williams,* 407 U.S. 143 (1972). Further, the officer was not required to await the "glint of steel" to protect his safety. *See People v. Foster,* 83 A.D.2d 282, 443 N.Y.S.2d 835 (1981).

Appellant claims that the recent case of *State v. Faalafua,* 64 Haw. 376, 641 P.2d 979 (1982) is dispositive of this case. We disagree. In *Faalafua,* the police officer relied on an alleged prostitute's second-hand information which he failed to verify. Here, firsthand personal observation of the police officer was involved.

Affirmed.

*Walter K. Horie (Jonathan J. Ezer* on briefs), Deputy Public Defender, for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.