NO. 29535

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee v.
ROBERT N. TOMINIKO, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(HPD Traffic No. 1DTA-08-08506)

MEMORANDUM OPINION
(By: Ginoza, J., with
Nakamura, C.J., concurring separately,
and Fujise, J., dissenting separately)

Defendant-Appellant Robert N. Tominiko (Tominiko)
appeals from a judgment entered on December 1, 2008 in the
District Court of the First Circuit, Honolulu Division (district
court).[1] Tominiko was convicted of Operating a Vehicle Under the
Influence of an Intoxicant (OVUII) in violation of Hawaii Revised
Statutes (HRS) § 291E-61(a)(1) and § 291E-61(a)(3) (Supp. 2008).

On appeal, Tominiko raises two points of error:

(1) The prosecution's written and oral charges for
OVUII were fatally insufficient because they failed to allege the
essential element that Tominiko operated or assumed actual
physical control of a vehicle "upon a public way, street, road,
or highway."

(2) The district court erred when it denied a motion to
suppress, because under the totality of the circumstances the
stop of Tominiko was not justified by specific and articulable
facts that Tominiko was engaged in criminal activity.

I.    Sufficiency of the Charge

In State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170
(2009), the Hawai'i Supreme Court recently held that under the
circumstances there, the State's failure to allege that Wheeler

---

[1]  The Honorable William Cardwell presided.

operated or assumed actual physical control of his vehicle "upon a public way, street, road, or highway" rendered the charge insufficient. There, the defendant immediately objected to the sufficiency of the charge before the trial court. In the instant case, Tominiko did not object to the charge at any point in the district court proceedings and instead raises the issue for the first time on appeal.

A.   Due Process Concerns and the Question of Jurisdiction

As a threshold matter, under existing Hawai'i case law, insufficiency of a charge is addressed primarily as a due process concern that implicates whether proper notice was given to the defendant. However, some cases further address it as a matter of basic jurisdiction.

This is significant because under the cases addressing the matter primarily as a *due process* concern (i.e., the accused's right to be informed of the nature and cause of the accusation),[2] an inquiry beyond the specific language of the charge may be appropriate, especially where the sufficiency of the charge is raised for the first time on appeal. See State v. Stan's Contracting, Inc., 111 Hawai'i 17, 34, 137 P.3d 331, 348 (2006) ("An insufficient indictment can be cured."); State v. Sprattling, 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002) ("[I]n *Motta* this court adopted a rule (hereinafter the '*Motta/Wells* post-conviction liberal construction standard'), which essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction.") (citation omitted); State v. Merino, 81 Hawai'i 198, 915 P.2d 672 (1996); State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995) (liberal construction standard inapplicable where alleged deficiency in the charge was raised by timely motion); State v. Israel, 78

---

[2] Article I, section 14 of the Hawai'i Constitution states, in relevant part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation". Haw. Const. art. I, § 14.

Hawai'i 66, 70, 890 P.2d 303, 307 (1995) ("In analyzing whether a defendant's article I, section 14 right to be informed has been violated, however, we are not confined to an examination of the charge. On the contrary . . . 'we must look to all of the information supplied to him [or her] by the State to the point where the court passes upon the contention that the right has been violated.'") (quoting State v. Treat, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984)); State v. Elliott, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994)(applying liberal construction standard and noting that "[o]ne way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole."); State v. Motta, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983) (under the liberal construction standard adopted for post-conviction challenges to indictments, conviction on a defective indictment will not be reversed "unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime").

To the contrary, in State v. Cummings, 101 Hawai'i 139, 63 P.3d 1109 (2003), sufficiency of the charge was addressed as a matter of substantive *jurisdiction* and the Hawai'i Supreme Court held that no further inquiry or analysis was relevant beyond the charge itself because a defective charge cannot be waived, nor can it be deemed harmless. In Cummings, where the indictment was timely challenged before the trial court, the court ruled that "reversal of a conviction obtained on such a defective accusation does not require a showing of prejudice." 101 Hawai'i at 143, 63 P.3d at 1113. The court concluded that:

> This is because a defect in a complaint is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her, but, rather, is one of substantive subject matter jurisdiction, "which may not be waived or dispensed with," *see Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244, and that is *per se* prejudicial, *see Motta*, 66 Haw. at 91, 657 P.2d at 1020 (quoting *United States v. Thompson*, 356 F.2d 216, 226 (2nd Cir. 1965)).

3

<u>Id.</u>[3]  <u>See</u> <u>also,</u> <u>Territory v. Goto</u>, 27 Haw. 65, 102-103, 1923 WL 2749 (Haw. Terr. 1923) (Peters, C.J., concurring)("Failure of an indictment to state facts sufficient to constitute an offense against the law is jurisdictional and is available to the defendant at any time.").

Notwithstanding the <u>Cummings</u> decision that a defective charge undermines jurisdiction, the court in <u>Cummings</u> did not overrule <u>Motta</u> and its progeny.  Further, most recently, <u>Wheeler</u> reconfirmed the view that the <u>Motta/Wells</u> post-conviction liberal standard applies when an objection to a defective charge is not timely raised in the trial court.  The <u>Wheeler</u> court stated:

> [T]his court has applied <u>different principles depending on whether or not an objection was timely raised in the trial court</u>.  Under the "*Motta/Wells* post-conviction liberal construction rule," we liberally construe charges challenged for the first time on appeal. . . .  Under this approach, there is a "presumption of validity," . . . for charges challenged subsequent to a conviction.  In those circumstances, this court will "not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime." . . . .  However, the rule does not apply when reviewing timely motions challenging the sufficiency of an indictment.

121 Hawai'i at 399-400, 219 P.3d at 1186-87 (citations omitted and emphasis added).

Thus, where a defective charge is challenged for the first time on appeal, the charge is presumed valid and the <u>Motta/Wells</u> liberal construction standard is applied.

---

    ³  For this ruling, the <u>Cummings</u> court relied on <u>State v. Jendrusch</u>, 58 Haw. 279, 567 P.2d 1242 (1977) and <u>State v. Motta</u>, 66 Haw. 89, 657 P.2d 1019 (1983).  While <u>Jendrusch</u> states that an insufficient charge "would constitute a denial of due process," which "may not be waived or dispensed with," and "the defect is ground for reversal, even when raised for the first time on appeal," 58 Haw. at 281, 567 P.2d at 1244, <u>Motta</u>, which was decided after <u>Jendrusch</u>, adopted the rule of liberally construing indictments challenged for the first time on appeal.  The <u>Motta</u> court explained that its decision was not incompatible with <u>Jendrusch</u> because, "[u]sing the language of these liberal construction cases we would still find that the charge in <u>Jendrusch</u> was 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.'" <u>Motta</u>, 66 Haw. at 92, 657 P.2d at 1021 (citation omitted).

B.    Application of the Motta/Wells Liberal Construction
      Standard

Under the Motta/Wells liberal construction standard,
the validity of the charge is presumed and the conviction will
not be reversed unless the defendant can show: (a) prejudice; or
(b) that the charge cannot within reason be construed to charge a
crime.

Tominiko does not assert that he has been prejudiced by
the defective charge. Rather, he contends that he need not show
prejudice, even where the liberal construction standard is
applied, because a defective charge is always fatal and the
district court lacked jurisdiction to preside over the case. As
set forth above, a conviction is not automatically reversed on
jurisdictional grounds where the defendant failed to timely
challenge a defective charge. Instead, the Motta/Wells liberal
construction standard applies, under which prejudice to the
defendant is a factor. See Wheeler, 121 Hawai‘i at 400, 219 P.3d
at 1187. Tominiko has thus failed to make any showing of
prejudice.[4]

Tominiko also fails to present any argument that the
Complaint or oral charge cannot reasonably be construed to charge
a crime. In deciding this issue, it is proper to "consider other
information in addition to the charge that may have been provided
to the defendant during the course of the case up until the time
defendant objected to the sufficiency of the charges against
him." Wheeler, 121 Hawai‘i at 396, 219 P.3d at 1183. See also
Elliott, 77 Hawai‘i at 312, 884 P.2d at 375 (court examined the
charge as a whole); State v. Schroeder, 76 Hawai‘i 517, 530, 880
P.2d 192, 205 (1994) (information from one count was reasonably
construed as providing sufficient information for another count,
with court noting both counts alleged offenses committed on same

---

[4] In addition, while not necessarily dispositive on the question of
prejudice, the record reflects that upon being given the oral charge, Tominiko
was asked if he understood the charge and he affirmatively responded "yes."

5

date); Treat, 67 Haw. 119, 680 P.2d 250 (grand jury transcripts informed defendant of the nature and cause of the accusation against him). Considering the information provided to Tominiko in the entirety of the written Complaint, as well as information in the facts stipulated for trial, the Complaint and oral charge can reasonably be construed to charge a crime.

In the three page Complaint, the first paragraph charges that on August 2, 2008, Tominiko committed the offense of OVUII but does not allege that he was driving a vehicle upon a public way, street, road, or highway. However, the third paragraph of the Complaint, alleging a charge for Driving Without Motor Vehicle Insurance on the same date as the OVUII charge (August 2, 2008), does allege that Tominiko "did operate or use a motor vehicle upon a public street, road, or highway of the State of Hawaiʻi." Because each of these paragraphs state that the events occurred "[o]n or about the 2nd day of August, 2008, in the City and County of Honolulu, State of Hawaiʻi," it is reasonable to construe that they arise from the same event. See Schroeder; Elliott.

Additionally, for the trial, Tominiko stipulated into evidence the facts in the police report. The police report states the "PLACE OF OFFENSE" for the OVUII charge as "AHONUI ST/N. SCHOOL ST HONOLULU, HI 96819." The police report also states that the vehicle operated by Tominiko was "parked on the right side of Ahonui St. about 20 feet from N. School St.", and that while being asked for his identification Tominiko got in his car, started to drive off slowly, but "had to stop, due to another vehicle traveling in the opposite direction which had to stop in front of his car due to traffic congestion." From the stipulated facts in the police report, it can be reasonably construed that the OVUII offense occurred on a public street or road.

Based on the above, Tominiko has not shown prejudice arising from the defective charge, and the Complaint and oral

charge can reasonably be construed to charge a crime. Therefore, under the Motta/Wells liberal construction standard, Tominiko's conviction will not be reversed due to the insufficiency of the OVUII charge.

II.   Motion to Suppress

Tominiko also contends that the district court erred in denying his motion to suppress evidence, which was grounded on the argument that the responding police officer did not have reasonable suspicion to stop and detain Tominiko.

A.   Standard of Review

On appeal, a *de novo* standard of review applies to a trial court's ruling on a motion to suppress evidence.

> A [circuit] court's ruling on a motion to suppress evidence is reviewed *de novo* to determine whether the ruling was "right" or "wrong." *State v. Edwards*, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (citing *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. *See State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999) (citations omitted).

State v. Estabillio, 121 Hawai'i 261, 269, 218 P.3d 749, 757 (2009) (quoting State v. Kaleohano, 99 Hawai'i 370, 375, 56 P.3d 138, 143 (2002)).

Evidence at both the suppression hearing and the trial are considered. State v. Sanford, 97 Hawai'i 247, 251 n.8, 35 P.3d 764, 768 n.8 (App. 2001); State v. Nakachi, 7 Haw. App. 28, 33 n.7, 742 P.2d 388, 392 n.7 (1987); State v. Uddipa, 3 Haw. App. 415, 416-17, 651 P.2d 507, 509 (1982). Further, because the State prevailed below on the motion to suppress, any factual disputes are reviewed in a light favorable to the prosecution. In Nakachi, this Court stated:

> When reviewing this issue, we consider all the evidence received at the motion to suppress hearing and at the trial. *State v. Uddipa*, 3 Haw.App. 415, 651 P.2d 507 (1982); 3 Wright, Federal Practice and Procedure: *Criminal 2d* § 678 (1982). Moreover, we view the factual disputes in the record in a light favorable to the party that prevailed on the

motion to suppress. *See* 3 Wright, Federal Practice and
Procedure: *Criminal 2d* § 678 (1982).

7 Haw. App. at 33 n.7, 742 P.2d at 392 n.7.

B.    <u>District Court Proceedings</u>

The only witness at the suppression hearing was Officer
Antwan Stuart.  Officer Stuart testified that on August 2, 2008,
around midnight, he was sent via Honolulu Police Department
dispatch to the intersection of Ahonui and School Streets in
response to "a call of about 15 people arguing."  When he
arrived, he testified that he saw about 15 to 20 people standing
around eating and drinking, including drinking beer.  Officer
Stuart testified that he saw "some green bottle Heinekens."
According to the police report, which was stipulated into
evidence at the trial, the group was standing around an Isuzu
Trooper.  Upon Officer Stuart's arrival the group started
grabbing things and leaving immediately.

When he first arrived, Officer Stuart was across the
street about 20 feet from the group and could hear people talking
loudly but could not determine if there was an argument.  When he
approached the group, Officer Stuart testified he did not recall
seeing Tominiko holding anything and did not recollect him
talking loudly.

Tominiko started walking towards the Isuzu Trooper and,
because Tominiko was the only person that didn't leave in a
hurry, Officer Stuart asked for his identification "to
investigate what was going on over there, if indeed there was
a[n] argument or if there was a fight" and also because Officer
Stuart testified "I've known that that area is -- a lot of people
like to drink over there."  In response to Officer Stuart's
request for his identification, Tominiko "mumbled something but
then kept walking and got into the car".

Officer Stuart followed Tominiko to the Isuzu Trooper
and asked him to get out of the vehicle.  Instead, Tominiko
started the vehicle and started to drive slowly off, at which

point Officer Stuart "yelled" at Tominiko to turn off the vehicle and to show his identification. After driving "about another seven feet or so," Tominiko was forced to stop because he didn't have enough room to get by another vehicle that was traveling in the opposite direction.

After Tominiko's vehicle came to its final resting spot, Officer Stuart approached from the rear driver's side and noticed empty beer bottles in the back seat. Tominiko was subsequently arrested and charged with, *inter alia*, OVUII. At the suppression hearing, the district court ruled that Officer Stuart had reasonable suspicion to stop Tominiko, and further that "once defendant refused to comply with [Officer Stuart's] simple request for identification, the officer had the further right to pursue the defendant and stop him."

C.   There Was an Investigative Stop Based On Reasonable
      Suspicion

Tominiko argues that the district court erred in denying his suppression motion because: (a) Officer Stuart's conduct amounted to a seizure of Tominiko; and (b) the seizure was not justified.

"[A] person is 'seized' in the constitutional sense if, from an objective standpoint and given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." State v. Trainor, 83 Hawai'i 250, 256, 925 P.2d 818, 824 (1996); State v. Tsukiyama, 56 Haw. 8, 525 P.2d 1099 (1974). "[A] person is seized, for purposes of article I, section 7 of the Hawai'i Constitution, when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information." State v. Kearns, 75 Haw. 558, 567, 867 P.2d 903, 907 (1994).

For investigatory stops, Hawaii has adopted the principles set forth in Terry v. Ohio, 392 U.S. 1 (1968). That is, the police may "temporarily detain an individual if they have

a reasonable suspicion based on specific and articulable facts that criminal activity is afoot." <u>Kearns</u>, 75 Haw. at 569, 867 P.2d at 908 (1994).

> To justify an investigative stop, short of an arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra*, at 21. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

<u>State v. Barnes</u>, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977). <u>See also</u> <u>State v. Madamba</u>, 62 Haw. 453, 456, 617 P.2d 76, 78 (1980); <u>State v. Powell</u>, 61 Haw. 316, 321-22, 603 P.2d 143, 147-48 (1979). In deciding whether there is reasonable suspicion for an investigatory stop, the totality of the circumstances is considered. <u>State v. Spillner</u>, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

Tominiko contends that he was improperly seized, particularly after he was pursued by Officer Stuart. Given the totality of the circumstances, a seizure clearly occurred when Officer Stuart followed Tominiko to his vehicle, asked him to get out and, as Tominiko started to drive away, Officer Stuart yelled at Tominiko to stop. Unlike in <u>Tsukiyama</u>, where an officer's request for identification was not deemed a seizure because the officer "did not *order* the defendant to get it or *demand* that he get it," 56 Haw. at 12, 525 P.2d at 1102 (emphasis in original), Officer Stuart's conduct here was an order or demand and, in the totality of the circumstances, a reasonable person would not believe he was free to leave. Although Tominiko did in fact continue his attempt to leave, an objective test is applied.

Notwithstanding that a seizure did occur, Officer Stuart had reasonable suspicion sufficient to support an investigatory stop. Although Tominiko contends the anonymous call of about 15 people arguing "lacked sufficient indicia of reliability to provide a reasonable and articulable suspicion,"

there was additional information observed by Officer Stuart at the scene, consistent with the complaint of about 15 people arguing, and which provided even further basis for reasonable suspicion that criminal activity was afoot.  The record does not support Tominiko's assertion that, "[w]hen Officer Stuart reached the scene, there was simply nothing to suggest a crime had been committed and that Mr. Tominiko was the perpetrator."  To the contrary, there had been the call to police of about 15 people arguing at that location; Tominiko was among the group of individuals at that location; it was midnight; the group was standing around the Isuzu Trooper that Tominiko would attempt to drive away; the vehicle and the group were located by the intersection of two public streets; some members of the group were observed talking loudly and drinking beer; and this was an area where Officer Stuart knew people liked to drink.

Based on the totality of the circumstances at this point, there are specific and articulable facts to support reasonable suspicion of criminal activity afoot, including disorderly conduct and possession of unsealed containers of intoxicating liquor on a public street.[5]  Although Officer Stuart

---

[5]  HRS § 711-1101 provides, in part:

(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

(a) Engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) Makes unreasonable noise; or

. . .

(2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; . . .

HRS § 711-1101 (Supp. 2009).

(continued...)

did not recall seeing Tominiko with anything in his hands (i.e. beer) or see him argue, such facts would approach or rise to the level of probable cause for an arrest, which is a higher standard than reasonable suspicion.  In addressing reasonable suspicion for an investigatory stop, the Hawai'i Supreme Court has favorably quoted language from the United States Supreme Court that "the likelihood of criminal activity need not rise to the level of probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  State v. Spillner, 116 Hawai'i 351, 358, 173 P.3d 498, 505 (2007) (quoting United States v. Arvizu, 534 U.S. 266, 273-74 (2002)).  Moreover, "[a] determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct."  Spillner, 116 Hawai'i at 358, 173 P.3d at 505 (quoting Arvizu, 534 U.S. at 277).

Additionally, combined with the facts set forth above and under the circumstances of this case, Tominiko's effort to leave the scene was an added factor supporting reasonable suspicion.  In addressing the higher standard of probable cause, the Hawai'i Supreme Court has noted: "although not dispositive, flight from the police is a factor which may support a finding of probable cause."  State v. Melear, 63 Haw. 488, 494, 630 P.2d 619, 625 (1981) (citing Sibron v. New York, 392 U.S. 40, 66-67 (1968); United States v. Minor, 382 F. Supp. 203, n.1 (D. Haw. 1974); Franklin v. United States, 382 A.2d 20 (D.C. App. 1978)).  Similarly, for investigatory stops, other courts have held that flight alone does not create reasonable suspicion, but it could be a factor when combined with other circumstances.  See State v.

---

[5](...continued)
Revised Ordinances of Honolulu, § 40-1.2(a) provides in pertinent part that "[n]o person shall possess, other than in a container in the manufacturer's sealed condition, intoxicating liquor on any street or sidewalk".

Pineiro, 853 A.2d 887, 895 (N.J. 2004); State v. Wright, 752 A.2d 1147 (Conn. App. 2000). Tominiko's efforts to enter his vehicle and drive away added to the already existing circumstances in this case.[6]

To clarify, simply refusing a police officer's request for identification is not enough, in and of itself, to justify an investigatory stop. To the extent the district court's ruling suggested as such, it would be incorrect. However, where as in this case there are other factors that also support reasonable suspicion, flight can be considered in the totality of the circumstances.

Finally, even if there was an improper seizure at the point Officer Stuart asked Tominiko to exit or to stop his car, there were no fruits from such seizure. Rather, Tominiko continued on for another seven feet until he was forced to stop by another vehicle driving in the opposite direction. At that point, Officer Stuart caught up with Tominiko's vehicle and while approaching the rear driver's side observed the empty beer bottles on the back seat. It was the other vehicle which prevented Tominiko from leaving, not the demands of Officer Stuart, and it was from that point that the empty beer bottles were observed and later that Officer Stuart and another responding officer smelled alcohol on Tominiko's breath.

---

[6] Tominiko relies on State v. Heapy, 113 Hawai'i 283, 151 P.3d 764 (2007) in arguing that his efforts to avoid Officer Stuart could not be a basis for the investigatory stop. In Heapy, a vehicle stop was deemed improper because the only basis for suspicion was the defendant's attempt to avoid a sobriety checkpoint. Here, as noted above, there are multiple additional factors other than just Tominiko trying to avoid Officer Stuart and thus Heapy is distinguishable.

Based on all of the above, the district court did not err in denying Tominiko's motion to suppress.

The judgment entered on December 1, 2008 is affirmed.

DATED:  Honolulu, Hawai'i, June 30, 2010.

On the briefs:

John M. Tonaki
Public Defender
Craig W. Jerome
Deputy Public Defender
for Defendant-Appellant

Peter B. Carlisle
Prosecuting Attorney
Brian R. Vincent
Deputy Prosecuting Attorney
for Plaintiff-Appellee

Associate Judge