Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000474
20-APR-2021
07:49 AM
Dkt. 60 SO

NO. CAAP-19-0000474

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
ADAM NATHANAEL, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANEʻOHE DIVISION
(CASE NO. 1DTC-18-007671)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Adam Nathanael (**Nathanael**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment (**Judgment**), entered on May 2, 2019, in the District Court of the First Circuit, Kaneʻohe Division (**District Court**).[1] Following a bench trial, Nathanael was convicted of Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (**OVLPSR-OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-62(a)(1) and (a)(2) (Supp. 2017), and was sentenced pursuant to HRS § 291E-62(c)(3).[2]

---

[1]  The Honorable Florence Nakakuni presided.

[2]  HRS § 291E-62 provides, in relevant part:

> **§ 291E-62  Operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant; penalties.** (a) No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E-61 or 291E-61.5, or to part VII or part XIV of chapter 286 or section 200-81, 291-4, 291-4.4, 291-4.5, or

On appeal, Nathanael contends that: (1) the District Court erred in denying Nathanael's motion to suppress evidence, because the officer who stopped Nathanael's vehicle lacked reasonable suspicion to conduct the stop; and (2) the District Court violated Nathanael's constitutional right to testify when it failed to conduct an adequate Tachibana[3/] colloquy, resulting in a waiver that was not knowingly and voluntarily provided by Nathanael. Regarding his first contention, Nathanael argues that because the traffic stop was unlawful, all evidence derived from the stop should have been suppressed, resulting in insufficient evidence to convict him of OVLPSR-OVUII.

The State argues, among other things, that this court lacks jurisdiction over this appeal, because Nathanael's notice of appeal was untimely.

---

291-7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:

    (1)   In violation of any restrictions placed on the person's license;

    (2)   While the person's license or privilege to operate a vehicle remains suspended or revoked;

. . . .

    (c) Any person convicted of violating this section shall be sentenced as follows without possibility of probation or suspension of sentence:

. . . .

    (3)   For an offense that occurs within five years of two or more prior convictions for offenses under this section, section 291E-66, or section 291-4.5 as that section was in effect on December 31, 2001, or any combination thereof:

        (A)   One year imprisonment;

        (B)   A $2,000 fine;

        (C)   Permanent revocation of the person's license and privilege to operate a vehicle; and

        (D)   Loss of the privilege to operate a vehicle equipped with an ignition interlock device, if applicable.

[3/]    State v. Tachibana, 79 Hawaiʻi 226, 900 P.2d 1293 (1995).

2

As a threshold matter, we conclude that this court has jurisdiction over this appeal.  Following entry of the Judgment (see supra), on June 4, 2019, Nathanael's counsel stated during a hearing in Case Nos. 1DTC-18-007671 (*i.e.*, the present case) and 1DTC-18-071132[4/] that the public defender's (**PD**) office would be representing Nathanael in the present appeal, and it was counsel's understanding that the PD's office "may have" filed a motion for an extension of time to file the notice of appeal.[5/] However, it appears that no such motion was filed, and there was no order entered by the District Court granting an extension of time to file the notice of appeal, pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(b)(5).  Rather, a notice of appeal initiating the present appeal was filed on July 1, 2019, more than 30 days after entry of the May 2, 2019 Judgment.  The notice of appeal was therefore untimely.  See HRAP Rule 4(b)(1).

"In criminal cases, [the Hawaiʻi Supreme Court] ha[s] made exceptions to the requirement that notices of appeal be timely filed[,]" including "circumstances where . . . defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance[.]"  State v. Irvine, 88 Hawaiʻi 404, 407, 967 P.2d 236, 239 (1998).  Here, it appears that Nathanael's failure to file a timely notice of appeal was due to ineffective assistance of counsel.  Therefore, the court will exercise jurisdiction over this appeal.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Nathanael's contentions as follows.

---

[4/]    Nathanael is also a defendant in Case No. 1DTC-18-071132, which is currently pending as a separate appeal before this court in No. CAAP-19-0000851.

[5/]    The transcript of the June 4, 2019 hearing is not part of the record in this appeal.  Nevertheless, this court takes judicial notice of the June 4, 2019 hearing transcript filed in CAAP-19-0000851.  See State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985) (explaining that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.  This court has validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same." (citation omitted)).

(1) Nathanael argues that the District Court erred in denying Nathanael's motion to suppress evidence, because Honolulu Police Department Officer Kaimi Kellett (**Officer Kellett**), who cited Nathanael "[f]or driving while license revoked and no insurance[,]" lacked reasonable suspicion to stop Nathanael.[6/]

In order to determine whether a person can be lawfully seized without first obtaining a warrant, we apply the following two-part test:

> First, we determine whether the person was "seized" within the meaning of the United States and Hawaiʻi Constitutions. Second, if the person was seized, we determine whether the seizure was lawful, *i.e.*, whether the police could have temporarily detained the individual because "they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot." [State v. ]Tominiko, 126 Hawaiʻi [68,] 77, 266 P.3d [1122,] 1131[ (2011)]. If the seizure was not supported by reasonable suspicion, the seizure was unlawful, and any evidence obtained as a result of the initial seizure is inadmissible at trial.

State v. Weldon, 144 Hawaiʻi 522, 531, 445 P.3d 103, 112 (2019).

Thus, we must first determine whether Nathanael was "seized" within the meaning of article I, section 7 of the Hawaiʻi Constitution. The supreme court has stated:

> A person is seized if, given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave. Whether a reasonable person would feel free to leave is determined under an objective standard that this court reviews de novo. A person is seized for purposes of article I, section 7 of the Hawaiʻi Constitution, when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information.

Id. at 531-32, 445 P.3d at 112-13 (quoting Tominiko, 126 Hawaiʻi at 77, 266 P.3d at 1131).

Here, Nathanael argues that he was seized when Officer Kellett stopped him for speeding at around 12:40 a.m. on August 29, 2018, and requested his personal information. The State does

---

[6/]    Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 12(b)(3) requires that a motion to suppress evidence be raised prior to trial. The failure to do so "shall constitute waiver thereof[.]" HRPP Rule 12(f). However, if a trial court entertains and rules on the motion to suppress at trial, the issue is properly before the appellate court. See State v. Hewitt, 149 Hawaiʻi 71, 76, 481 P.3d 713, 718 (App. 2021); State v. Przeradski, 5 Haw. App. 29, 32, 677 P.2d 471, 474 (1984). Here, the District Court heard argument on and denied Nathanael's oral motion to suppress at trial. Nathanael's first point of error is thus properly before us.

not appear to dispute this assertion.  We conclude that, given the totality of the circumstances, a reasonable person in Nathanael's position would not have felt free to ignore Officer Kellett's inquiries and leave the scene.  Thus, Nathanael was seized pursuant to article I, section 7 of the Hawaiʻi Constitution.

"Generally, a seizure without a warrant is presumed invalid unless the State proves that the seizure falls within an exception to the warrant requirement of article I, section 7 of the Hawaiʻi Constitution."  Id. at 532-33, 445 P.3d at 113-14 (citing State v. Heapy, 113 Hawaiʻi 283, 290, 151 P.3d 764, 771 (2007)).  "One such exception is a temporary investigative stop [in which] an officer has 'reasonable suspicion' that the person stopped was engaged in criminal conduct."  Id. at 533, 445 P.3d at 114 (citing State v. Kearns, 75 Haw. 558, 569, 867 P.2d 903, 908 (1994)).

> To justify an investigative stop, short of an arrest based on probable cause, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a person of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

Id. (brackets omitted) (quoting Tominiko, 126 Hawaiʻi at 77-78, 266 P.3d at 1131-32).  The supreme court has also stated that "officers must have a 'particularized and objective' basis for suspecting that the person seized has committed or is about to commit a crime."  Id. (quoting Tominiko, 126 Hawaiʻi at 78, 266 P.3d at 1132).  "In other words, reasonable suspicion must be based on 'a suspicion that the particular individual being stopped is engaged in wrongdoing.'"  Id. (quoting State v. Uddipa, 3 Haw. App. 415, 418, 651 P.2d 507, 510 (1982)); see also Heapy, 113 Hawaiʻi at 292, 151 P.3d at 773 ("The totality of the circumstances, measured by an objective standard, must indicate that criminal activity is afoot."  (emphasis omitted)).

Here, at trial, the State did not elicit specific and articulable facts from which a person of reasonable caution would be warranted in believing that criminal activity was afoot and that stopping Nathanael for speeding was appropriate.  Officer

Kellett testified that on August 29, 2018, he first observed Nathanael at the intersection of Kailua Road and Kalanianaole Highway, while Officer Kellett was in his marked blue and white patrol vehicle. Nathanael was in the left lane, Officer Kellett was in the right lane, and they both turned left in front of Castle Hospital to head toward Pali Highway. According to Officer Kellett, the speed limit was 35 miles per hour before the turn and 45 miles per hour after the turn. Officer Kellett testified that "right after [making] the turn," Nathanael "started speeding up, at a I guess higher rate of speed than I was." Officer Kellett further described Nathanael's speed after the turn as "a lot higher than I guess normal, I would usually go I guess." Officer Kellett also paced Nathanael's vehicle before stopping him. However, Officer Kellett **did not state the speed at which he was traveling** when Nathanael was accelerating or while pacing Nathanael. In addition, Officer Kellett did not recall any other vehicles on the road, *i.e.*, for the purpose of comparing Nathanael's relative speed. Nor did Officer Kellett provide admissible testimony that he suspected or believed Nathanael's vehicle exceeded the speed limit.[7] When asked, "Did you receive any training on how to identify with your eye as to how fast the vehicle was traveling?" Officer Kellett responded, "No, just from observing, I mean, from driving the past 18 years I guess."

These are not "specific and articulable facts" from which a person of reasonable caution could infer that Nathanael was driving at a speed exceeding the posted speed limit. In sum, the totality of the circumstances, measured by an objective standard, does not indicate that criminal activity was afoot and that stopping Nathanael for speeding was appropriate. On this record, we thus conclude that Officer Kellett lacked reasonable suspicion to stop Nathanael.

---

[7] Officer Kellett testified at one point how fast he thought Nathanael was going, but the District Court sustained a defense objection to that testimony based on lack of foundation. The State did not further question Officer Kellett to establish his belief that Nathanael had exceeded the speed limit.

The court "prohibit[s] the use of evidence at trial that comes to light as a result of the exploitation of a previous illegal act of the police." Weldon, 144 Hawaiʻi at 534, 445 P.3d at 115 (citing Tominiko, 126 Hawaiʻi at 81, 266 P.3d at 1135). In determining whether evidence is tainted by such an act, the Hawaiʻi Supreme Court follows the standard set out in Wong Sun v. United States, 371 U.S. 471 (1963): "admissibility is determined by ascertaining whether the evidence objected to as being the 'fruit' was discovered or became known by the exploitation of the prior illegality or by other means sufficiently distinguished as to purge the later evidence of the initial taint." Weldon, 144 Hawaiʻi at 534, 445 P.3d at 115 (brackets omitted) (quoting Tominiko, 126 Hawaiʻi at 81, 266 P.3d at 1135). In other words, the court asks, "disregarding the prior illegality, would the police nevertheless have discovered the evidence?" Id. (brackets omitted) (quoting State v. Trinque, 140 Hawaiʻi 269, 281, 400 P.3d 470, 482 (2017)).

Here, the State failed to establish that Officer Kellett had a reasonable suspicion that Nathanael was speeding when Nathanael's vehicle was stopped. See supra. Therefore, the officer's subsequent identification of Nathanael as the operator of the vehicle stemmed from his unlawful seizure.[8/] The State makes no argument that absent the unlawful seizure, it would have discovered this evidence. Without Officer Kellett's identification of Nathanael as the operator of the vehicle, there was no evidence that Nathanael operated or assumed actual physical control of a vehicle, an element that had to be proven to convict him of OVLPSR-OVUII. See State v. Wallace, 80 Hawaiʻi 382, 414 n.30, 910 P.2d 695, 727 n.30 (1996) (sufficiency of the evidence "is reviewed based only on the evidence that was properly admitted at trial" (quoting State v. Malufau, 80 Hawaiʻi 126, 132, 906 P.2d 612, 618 (1995))). Accordingly, we conclude there was insufficient evidence to convict Nathanael of OVLPSR-OVUII.

---

[8/] At trial, Officer Kellett testified that he identified Nathanael after stopping him and obtaining his name, date of birth, and last four digits of his Social Security number, which Officer Kellett then checked against a database, which in turn revealed a match.

Given our conclusion, we do not reach Nathanael's second point of error.

Therefore, IT IS HEREBY ORDERED that the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on May 2, 2019, in the District Court of the First Circuit, Kaneʻohe Division, is reversed.

DATED:  Honolulu, Hawaiʻi, April 20, 2021.


On the briefs:

Megan McDonald,
Deputy Public Defender,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Keith K. Hiraoka
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge