**<u>NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000058
22-DEC-2023
08:20 AM
Dkt. 92 SO**

NO. CAAP-22-0000058

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KEKOA FIGUEROA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-20-0000043)

<u>**SUMMARY DISPOSITION ORDER**</u>
(By: Ginoza, Chief Judge, Nakasone and Guidry, JJ.)

Defendant-Appellant Kekoa Figueroa (**Figueroa**) appeals from the Judgment of Conviction and Probation Sentence **(Judgment)**, filed on February 1, 2022, and amended on December 27, 2022 by the Circuit Court of the First Circuit (**circuit court**).[1] For the reasons set forth below, we vacate the circuit court's Judgment, and this case is remanded for a new trial.

---

[1] The Honorable Trish K. Morikawa presided.

In January 2020, Figueroa was charged via Felony Information, with Unauthorized Control of Propelled Vehicle (**UCPV**), in violation of Hawaii Revised Statutes **(HRS)** § 708-836 (2014).[2]  The Felony Information alleged that,

> On or about January 8, 2020, in the City and County of Honolulu, State of Hawai[']i, Kekoa Figueroa did intentionally or knowingly exert unauthorized control over a propelled vehicle, by operating the vehicle without the consent of German Dalo, owner of said vehicle, thereby committing the offense of Unauthorized Control of Propelled Vehicle, in violation of Section 708-836 of the Hawaii Revised Statutes.

Prior to trial, Figueroa filed Defendant's Motion to Suppress Evidence (**Motion to Suppress**), dated June 12, 2020, requesting that the circuit court suppress and preclude from use at trial the evidence obtained by the Honolulu Police Department (**HPD**) during Figueroa's brief investigative detention on January 8, 2020.  Figueroa contended that Officers Lyle Maiava (**Officer Maiava**) and Christopher Chu's (**Officer Chu**) "prolonged detention of Defendant for purposes other than to address a traffic infraction, *to wit*, failure to use turn signal, was an

---

[2]     HRS § 708-836 (2014) states, in pertinent part,

> Unauthorized control of a propelled vehicle in the first degree.  (1) A person commits the offense of unauthorized control of a propelled vehicle in the first degree if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the propelled vehicle without the owner's consent or by changing the identity of the propelled vehicle without the owner's consent.

illegal seizure," and that the introduction of evidence obtained during the detention thus violated his rights under Article I, Sections 5 and 7 of the Hawai'i State Constitution, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

The circuit court denied Figueroa's Motion to Suppress, after hearing the motion on January 7, 2021, and entered its Findings of Fact, Conclusions Of Law, and Order Denying Defendant's Motion to Suppress Evidence **(Order)** on February 19, 2021. In its Order, the circuit court made the following unchallenged findings of facts:

1. The Court finds that State's Witnesses, Officers Christopher Chu ("Officer Chu") and Lyle Maiava ("Officer Maiava") were credible.

2. On January 8th, 2020, at about 5:30 pm, HPD Officer Chu and HPD Officer Maiava were on duty in the City and County of Honolulu in a high crime area.

3. While operating an unmarked vehicle on a Honolulu roadway and making checks, Officer Chu and Officer Maiava observed a male later identified as Kekoa Figueroa ("Defendant") operating a moped bearing Hawai['] i Decal "Z18009."

4. Defendant was observed by the officers turning onto Ke['] eaumoku Street without using a turn signal.

5. Officer Chu, who was seated in the passenger seat of the unmarked vehicle, observed that the moped was being operated without any keys in the ignition. Officer Maiava independently observed the same.

6. Officer Chu and Officer Maiava continued to follow the Moped, which turned into the Walmart parking lot located on Ke['] eaumoku Street. Without being pulled over by the HPD officers, the Defendant proceeded towards the entrance of Walmart and parked the moped near some soda machines.

7.  Suspecting Defendant was operating the moped without authorization, Officer Chu and Officer Maiava parked their vehicle and approached Defendant on foot.

8.  While Officer Chu approached and spoke to the Defendant, Officer Maiava immediately conducted checks upon the moped and verified that the moped bearing Hawai[']i Decal "Z18009" is registered to a German Dalo ("Dalo").

9.  Officer Maiava contacted Dalo's phone number; Dalo related that he is still the current owner of the moped, that he does not know a Kekoa Figueroa and that he did not give Kekoa Figueroa permission to use, operate, or possess his moped.

10. Based on the phone records of Officer Chu's cell phone (that were entered into evidence as State's exhibit #4), the phone call from Officer Maiava to Dalo's phone number was initiated at 5:33 pm and lasted 6 minutes.

Based on the above-factual findings, the circuit court made the following conclusions of law:

1.  The Perez test is controlling for investigative stops such as in the instant case in determining whether the stop/detention was justified.  State v. Perez, 111 Hawai'i 392 (2006).

2.  The suspicion of HPD Officer Chu and HPD Officer Maiava (before approaching Defendant) that Defendant was operating the moped without authorization was reasonable.

3.  The investigative actions by the HPD officers were reasonable at their inception.

4.  The time period from when HPD Officers Chu and Maiava first saw Defendant until the end of the phone call to Dalo did not last longer than was necessary to effectuate the purpose of the detention (the investigation of the possible stolen moped), and was limited in scope to that which justified the initial stop.[3]

---

[3]  With respect to the timing, the circuit court further explained,

At 5:30 the officers see the defendant operating the moped. The defendant had to drive to Walmart, park the moped. The officers had to park their car, walk to the defendant, get the VIN, run the VIN, and call the registered owner.

(continued...)

4

> 5. The investigation for unauthorized control of a propelled vehicle and any seizure of Defendant pursuant thereto, was reasonably related in scope to the circumstances, which justified the interference in the first place.

(Footnote added.)

The matter proceeded to a jury trial. At trial, Figueroa raised, *inter alia*, a mistake-of-fact defense. Counsel for the State and Figueroa both agreed to the mistake-of-fact jury instruction set forth in the Court's Special Instruction No. 3, as modified by agreement, and the circuit court so instructed the jury. The jury reached its verdict on May 3, 2021, finding Figueroa guilty as charged of UCPV. The circuit court entered its Judgment sentencing Figueroa to four years of probation with special conditions.

Figueroa raises two points of error on appeal. He contends: (1) "[t]he trial court erroneously concluded that the police had reasonable suspicion from the inception to detain Figueroa for purposes of investigating whether the moped was

---

[3](...continued)
> All of that occurred -- if the call was made at 5:33, all of that occurred in three minutes. Therefore, a good chunk of that three minutes was following the defendant, parking and approaching the defendant. Thereafter, Officer Maiava talked to the registered owner for six minutes.
>
> Based on that information, the detention of the Defendant did not last longer than was necessary to effectuate the investigation of the possible stolen moped.

stolen"; and (2) "[t]he [deputy prosecuting attorney]'s improper remarks during his rebuttal closing argument substantially prejudiced Figueroa's right to a fair trial."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Figueroa's contentions of error as follows:

(1) We review the circuit court's denial of Figueroa's Motion to Suppress *de novo* to determine whether that ruling was "right" or "wrong." State v. Spillner, 116 Hawaiʻi 351, 357, 173 P.3d 498, 504 (2007) (citation omitted).

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

Id. (citation omitted).

An investigative search is supported by the law enforcement officer's reasonable suspicion for conducting the investigative search. State v. Perez, 111 Hawaiʻi 392, 398, 141 P.3d 1039, 1045 (2006). "[T]he subject matter and intensity of the investigative detention must be limited to that which is justified by the initial stop." State v. Iona, 144 Hawaiʻi 412, 417, 443 P.3d 104, 109 (2019) (cleaned up).

Reasonable suspicion exists where the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts," demonstrate that "measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate." Perez, 111 Hawai'i at 398, 141 P.3d at 1045 (cleaned up). A court determines whether reasonable suspicion exists based on consideration of the "totality of the circumstances." Spillner, 116 Hawai'i at 357, 173 P.3d at 504 (citations omitted).

The record reflects that Officers Maiava and Chu had reasonable suspicion to carry out their brief investigative detention of Figueroa. Officers Maiava and Chu testified to observing that there was no key in the ignition of the moped that Figueroa was riding. Officer Chu testified that a moped being operated without a key was "very unusual," and that "from past experiences [the lack of a key] usually is a key indicator that the vehicle might possibly be stolen." The officers approached Figueroa after he had pulled into the Walmart parking lot and parked the moped. They introduced themselves as police officers, obtained Figueroa's name, and then visually observed and ran checks on the moped's vehicle identification number (**VIN**). Figueroa explains in his opening brief that "the VIN []

was openly indicated on the frame of the moped and the decal affixed to the rear of the moped." Officer Chu testified that the VIN could be observed just by looking at the moped. Officer Maiava testified that the VIN is readily observable because it is "visible to anybody that looks for it."

The officers learned, based on their check of the moped's VIN that, while not reported stolen, the moped was not registered to Figueroa. Officer Maiava contacted the registered owner of the moped, German Dalo, by telephone. Dalo informed Officer Maiava, during a six-minute phone call at 5:33 p.m., that Figueroa did not have permission to operate the moped. Officers Maiava and Chu testified that they arrested Figueroa once they had verified that Figueroa did not have permission to operate the moped, and that Dalo wanted to prosecute.

Based on the totality of the circumstances, we conclude that the brief detention of Figueroa was reasonable, did not last longer than necessary to investigate whether the moped was stolen, and was limited to effectuating the purpose of the detention to investigate whether the moped was stolen. Iona, 144 Hawai'i at 417, 443 P.3d at 109; Spillner, 116 Hawai'i at 357, 173 P.3d at 504. The circuit court did not, on this record, err in denying Figueroa's Motion to Suppress.

(2) We review Figueroa's contention of prosecutorial misconduct under the harmless beyond a reasonable doubt standard. State v. Mainaaupo, 117 Hawaiʻi 235, 247, 178 P.3d 1, 13 (2008). This court must first determine,

> (1) whether the conduct was improper; (2) if the conduct was improper, whether the misconduct was harmless beyond a reasonable doubt; and (3) if the misconduct was not harmless, whether the misconduct was so egregious as to bar reprosecution.

State v. Udo, 145 Hawaiʻi 519, 534-35, 454 P.3d 460, 475-76 (2019) (citation omitted). In addressing whether improper conduct is harmless beyond a reasonable doubt, this court will consider "the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against the defendant." Id. at 535, 454 P.3d at 476 (citation omitted). "Prosecutorial misconduct is not harmless beyond a reasonable doubt if there is a reasonable possibility that the misconduct complained of might have contributed to the conviction." Id. (cleaned up).

Figueroa specifically contends that the following misstatement of law, made by the deputy prosecuting attorney during rebuttal closing argument, was substantially prejudicial,

BY [Deputy prosecuting attorney]:

Defense counsel argues that Mr. Figueroa thought that this moped was, quote, "trash." Well, it's not hard to figure out if that moped belongs to somebody. He understands, he testified that he understands the concept of registration and title. He made no attempt to find out if it was trash or abandoned in any way.

Now, defense counsel, he harps on mistake of fact. So looking at page 20, he's saying that he thought that the moped was abandoned, but when we look at the elements of the offense, he needs to have permission from the owner. This isn't a case where he's saying that, you know, Jojo sold me the moped or some other person gave me permission, I'm mistaken, I thought -- I thought that the other person had authorization. This isn't that kind of situation. **This is a situation where he found the moped, he didn't get permission from anybody. So the mistake of fact instruction doesn't apply because he's doing it without the owner's permission. He didn't seek permission from anybody. He didn't seek permission from not a single person. So for mistake of a fact -- fact to apply, he would have to say I got permission from Bobby down the street to drive this moped, and you would have to believe that testimony. That isn't the case here. He sought permission from literally no one, and the law requires him to seek permission.**

[Defense counsel]: **Objection, misstates the law.**

THE COURT: **Sustained.**

[Deputy prosecuting attorney]: The bottom line is that is not the situation in this case. He's not mistaken of fact. He knew that he -- he knew that he was operating that moped without permission.

Defense counsel says he didn't have a chance to, like, try to get legal ownership by registering. The defendant himself testified that he had it for multiple weeks prior to driving it. He had every chance and all the time -- and he -- he had plenty of time to seek permission or seek -- figure out who the owner was.

So in light of all that, the State would ask the ladies and gentlemen of the jury to reach the only verdict that is appropriate, that is guilty as charged. Thank you.

(Emphasis added.)

10

On appeal, Figueroa contends that the circuit court erred because, although it sustained Figueroa's objection to the above remarks, it did not *sua sponte* strike those remarks and/or issue a curative instruction. Figueroa's contention has merit.[4]

---

[4]     The circuit court correctly instructed the jury on mistake-of-fact, *prior to* the prosecutor's rebuttal closing argument, as follows,

> In any prosecution for an offense, **it is a defense that the defendant engaged in that -- in the prohibited conduct under ignorance or mistake of fact** if the ignorance or mistake of fact -- sorry -- **if the ignorance or mistake negates the state of mind required to establish an element of the offense.**
>
> Thus, for example, a person is provided a defense to a charge based on an intentional or knowing state of mind if the person is mistaken (either reasonably, negligently, or recklessly) as to a fact that negates the person's state of mind required to establish an element of the offense; however, a reckless mistake would not afford a defense to a charge based on a reckless state of mind.
>
> **The burden is upon the prosecution to prove beyond a reasonable doubt that the defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the offense. If the prosecution fails to meet its burden, then you must find the defendant not guilty.**

(Emphasis added.) This instruction, along with the circuit court's general instruction that the jury must disregard any argument that "misstate[d] these instructions," did not cure the prosecutor's subsequent misstatement of the law.

> The prosecutor did not make a curative statement specifically directed at correcting the improper definitions that had been provided. Additionally, no curative instruction was given by the circuit court. Although the court generally instructed the jury prior to closing arguments that "[s]tatements or remarks made by counsel are not evidence," this instruction did not neutralize the prosecutor's oral amendment to the accomplice instruction, which misstated the requirements of the law.

State v. Basham, 132 Hawaiʻi 97, 111, 319 P.3d 1105, 1119 (2014).

The circuit court's failure to cure this misstatement was not harmless beyond a reasonable doubt.

Mainaaupo explained that the elements of UCPV under HRS § 708-836 are: "(1) the person's conduct of exerting control over a thing by operating it, (2) the attendant circumstance of the thing being 'another's' (i.e., the registered owner's) propelled vehicle, and (3) the attendant circumstance of the person's control/operation being without the registered owner's consent." 117 Hawaiʻi at 249, 178 P.3d at 15 (emphasis and bracketed text omitted). Thus, one of the elements of UCPV is the attendant circumstance of the vehicle being "another's."

Here, Figueroa's defense was based on an alleged mistake-of-fact as to the attendant circumstance of the moped being "another's"; Figueroa testified at trial that he found the moped in the "Ala Wai river" and that he mistakenly believed it to have been "trash." The deputy prosecuting attorney, in rebuttal closing argument, misstated to the jury that "the mistake of fact instruction doesn't apply" because, even if Figueroa "found the moped," he did not have "permission from anybody" to take the moped:

> This is a situation where he found the moped, he didn't get permission from anybody. So the mistake of fact instruction doesn't apply because he's doing it without the owner's permission. He didn't seek permission from anybody.

12

This was an incorrect characterization of Figueroa's mistake-of-fact defense, which did not claim a factual mistake about the consent-from-registered-owner element, but asserted Figueroa's belief that the moped no longer belonged to another, and thus, consent could not or need not be obtained.[5] And because these misstatements about the mistake-of-fact defense were made during rebuttal closing argument, they were effectively the final words to the jury regarding that defense. "If there is a reasonable possibility that error might have contributed to a conviction in a criminal case, then the error cannot be harmless beyond a reasonable doubt, and the conviction must be set aside." State v. Klinge, 92 Hawaiʻi 577, 583, 994 P.2d 509, 515 (2000) (citation omitted). We conclude, on this record, that the prosecutor's misstatement of law was not harmless beyond a reasonable doubt.

For the foregoing reasons, the Circuit Court of the First Circuit's Judgment of Conviction and Probation Sentence,

---

[5] The prosecutor misstated to the jury that Figueroa could not, based on the evidence, have acted under a mistake-of-fact. If the jury believed Figueroa's testimonial account -- i.e., that he took what he believed to be "trash" from the "Ala Wai river" -- it could have also found that Figueroa was acting under a mistake-of-fact, as properly defined.

filed on February 1, 2022, and amended on December 27, 2022, is vacated, and this case is remanded for a new trial.

DATED: Honolulu, Hawai'i, December 22, 2023.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender
For Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge